[Crim. No. 900. In Bank.—January 11, 1904.]

## THE PEOPLE, Respondent, v. CHEW LAN ONG, Appellant.

CRIMINAL LAW—PLEA OF GUILTY—DETERMINATION OF DEGREE BY THE COURT—CONSTITUTIONAL LAW—TRIAL.—Section 1192 of the Penal Code, conferring upon the court the power to determine the degree of a crime upon a plea of guilty, is not unconstitutional as being violative of the provisions of the state and federal constitutions for the right of trial of all crimes by jury. The proceeding for such determination is not a trial.

ID.—POWER OF COURT TO TAKE EVIDENCE.—The court being vested with the power to determine the degree of the crime, it has implied power under section 187 of the Code of Civil Procedure to take evidence to aid in such determination; and it is not a tenable objection to section 1192 of the Penal Code that it does not provide any mode by which the court is to reach the determination, nor provide for the taking of evidence on the subject.

ID.—MURDER—JUDGMENT OF DEATH—WARRANT—DIRECTION TO WARDEN—SURPLUSAGE—DUTY OF WARDEN.—The fact that a warrant issued to the sheriff for the execution of a defendant who has pleaded guilty of murder, and has been determined by the court to be guilty of murder in the first degree, in addition to the other provisions required to be inserted in the warrant, unnecessarily inserted a direction to the warden of the state's prison to execute

the defendant, does not vitiate it. Such direction may be disregarded as surplusage. It is the duty of the warden to execute the judgment of death under the law, independent of the order of the court.

ID.—WARRANT FUNCTUS OFFICIO—ORDER TO WARDEN.—A warrant of death becomes *functus officio* after the lapse of the time within which it directed the defendant to be executed; and an order must then be made under section 1227 of the Penal Code, after the defendant is brought before the court, expressly requiring the warden to execute the judgment at a specified time.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Carroll Cook, Judge.

The facts are stated in the opinion of the court.

H. H. McCloskey, and Barnes & Farquar, for Appellant.

Tirey L. Ford, Attorney-General, and A. A. Moore, Jr., Deputy Attorney-General, for Respondent.

LORIGAN, J.—An information was filed against the defendant in the superior court of the city and county of San Francisco, charging him with the crime of murder.

Upon arraignment he pleaded "Not guilty," but subsequently withdrew this plea and entered one of "Guilty."

When this latter plea was received by the court, it was conceded by the attorney for the defendant, that the duty devolved upon the court of determining, and fixing, under section 1192 of the Penal Code, the degree of crime, before passing sentence, and it was stipulated that the testimony taken at the preliminary examination of the defendant be introduced in evidence and used by the court for that purpose.

Thereafter, on March 10, 1902, the court determined from such evidence, that the crime was murder of the first degree, and adjudged that the defendant suffer the penalty of death, and on March 12, 1902, the judge of said court signed and issued a warrant of execution, directing the warden of the state prison, at San Quentin, to execute the judgment of death against said defendant on the sixth day of June, 1902.

The defendant appeals from said judgment and the order of execution, and contends,—1. That the court had no au-

thority to determine the degree of the crime; and 2. That the judgment and order of execution are void, because the court had no power to direct the warden of the state prison to execute the defendant.

In their briefs, counsel for appellant, upon the first point urge, that the power attempted to be conferred on the court by said section 1192, to determine the degree of crime upon the plea of guilty before passing sentence, is violative of that provision of both the state and federal constitutions providing that the trial of all crimes shall be by jury.

This is no new point. The same contention was made in this court forty years ago, and decided adversely to appellant's claim.

In *People* v. *Noll,* 20 Cal. 164, this court said: "The proceeding to determine the degree of the crime of murder after a plea of guilty is not a trial. No issue was joined upon which there could be a trial. There is no provision of the constitution which prevents a defendant from pleading guilty (to the indictment) instead of having a trial by jury. If he elects to plead guilty to the indictment, the provision of the statute for determining the degree of the guilt, for the purpose of fixing the punishment, does not deprive him of any right of trial by jury."

*People* v. *Lennox,* 67 Cal. 115, is to the same effect, and in *Hallinger* v. *Davis,* 146 U. S. 314, the supreme court of the United States declare that a statutory provision conferring power on the court under such a plea, to determine the degree of crime violates no provision of the constitution of the United States.

On the oral argument counsel made an additional point not presented in their brief, that this section is unconstitutional, because it does not provide any manner, or mode, whereby the court is to reach its determination as to the degree of crime; that it does not provide for the taking of evidence on the subject.

Jurisdiction to determine the matter is, however, expressly conferred on the court by the section. This means that there shall be a judicial determination, and where power is especially conferred upon a court of general jurisdiction to determine a particular question, and no special mode for that

determination is pointed out, the jurisdiction conferred neces-
sarily implies authority in such court to call to its assistance
in determining the particular question, the same aid as is
usually employed by it in reaching a judicial determination
in other cases.

The universal aid is evidence. This was the means em-
ployed by the lower court in determining the degree of crime
in the case at bar. It is the only means by which a judicial
determination can be had, and was the means which it was
contemplated by the legislature should be invoked by the
court.

If there could be any doubt of this general rule, we are
satisfied that the course pursued by the lower court is pro-
vided for and sanctioned by section 187 of the Code of Civil
Procedure, which declares that ''When jurisdiction is, by
the constitution or this code, or by any other statute, con-
ferred on a court or judicial officer, all the means necessary
to carry it into effect are also given; and in the exercise of
this jurisdiction, if the course of proceeding be not specifi-
cally pointed out by this code or the statute, any suitable pro-
cess or mode of proceeding may be adopted which may appear
most conformable to the spirit of this code.''

The method adopted by the lower court was entirely con-
formable to that spirit which provides for a judgment upon
a conviction or plea of guilty of crime. If appellant's con-
tention could prevail, a plea of guilty, generally, in those
cases where the crime is divided into degrees—murder, bur-
glary, arson—would be tantamount to immunity from punish-
ment, because, as the determination of the degree of crime by
the court is an essential prerequisite to the imposition of sen-
tence, if the court is powerless to determine that degree, it is
equally powerless to impose sentence, and hence, being un-
able to hold the defendant for any legal purpose, would be
required to discharge him. This situation itself illustrates
the wisdom of the general code provision, and the necessity
for its application.

Under the second point appellant insists that the judge of
the lower court had no power to insert in the warrant of
execution a direction to the warden of the state prison to
execute the defendant. Such a direction, however, would not

render the order void. The law provides that the judge in such warrant shall designate the date of execution, and require the sheriff to deliver the defendant to the warden for execution. (Pen. Code, sec. 1217.) The fact that the warrant in addition directed the warden to execute the judgment of death is of no moment, as this was a duty devolving upon the warden under the law, independent of the order of court. The order to that extent was surplusage. We are mindful of counsel's contention that there is no provision of law directing the warden to execute a judgment of death, but hardly think the contention worthy of serious consideration. The provisions of the Penal Code (secs. 1224, 1226, 1227) designate him as the official who must execute such judgment.

But, assuming that such direction to the warden in the warrant of execution was error, it could not now be available to the defendant for a reversal. From lapse of time the order has become *functus officio,* in as far as it directed the execution of the defendant. He was directed to be executed on June 6, 1902. That time having elapsed, another order of execution must be made, under which the point urged now cannot arise, because, by section 1227 of the Penal Code, the defendant must be brought before the court, and an order made which shall expressly require the warden to execute the judgment at a specified time.

We perceive no reason why the judgment and order should be disturbed, and they are affirmed.

McFarland, J., Shaw, J., Angellotti, J., Van Dyke, J., Henshaw, J., and Beatty, C. J., concurred.