JAMES KUHL, Relator, v. DISTRICT COURT of the FIRST JUDICIAL DISTRICT of the State of Montana, in and for the COUNTY OF LEWIS AND CLARK, and the Honorable Victor H. Fall, the Judge Thereof, Respondents.

No. 10255.
Submitted May 18, 1961. Decided November 21, 1961.
366 P.2d 347.

Geoffrey L. Brazier, (argued orally) Helena, for relator.
William F. Crowley (argued orally), Helena, for respondents.

MR. JUSTICE ADAIR delivered the Opinion of the Court.

Original proceeding. Relator here seeks an appropriate writ invoking the jurisdiction of this court to review, correct, annul and determine certain proceedings had and done by the respondents in district court criminal cause No. 3195, *after* the relator, on March 6, 1961, entered his plea of "guilty" of grand larceny as charged in the information in the above-numbered cause and *before* the passing of sentence upon the relator.

Relator here asserts that *after* he had entered, in open court, his plea of guilty of the offense charged and *before* sentence had been pronounced upon him, the respondent trial judge held private conferences in his chambers, with unspecified parties, all in the absence of both the relator and his counsel, where the respondent judge received, listened to and was influenced by accusations made against relator to the effect that relator

had a most unsavory criminal record; that he was the "ring leader" of the group of defendants then and there awaiting sentence for the same offense of which relator was accused and that, based upon such accusations and representations so made, out of court, against the relator, the respondent judge denied relator his rights both under the provisions of sections 94-7813 and 94-7814, Revised Codes of Montana of 1947 and under the Constitution.

At the outset, by complaint filed October 7, 1960, in the Justice of the Peace Court of Helena Township, in Lewis and Clark County, before A. J. White, Justice of the Peace, the county attorney jointly accused *five men* with having committed grand larceny by feloniously stealing and carrying away 5,000 pounds of copper wire belonging to the Montana Power Company.

The men so jointly accused were: Russell Sadler, Gordon Clark, Dennis Giles, Richard Rushford, and the relator herein James Kuhl.

*Sadler Fined.* After the filing of the complaint, the defendant, Russell Sadler, appeared, without counsel before Justice of the Peace White and, on October 13, 1960, he requested a preliminary hearing on the grand larceny charge. However, no such hearing was held. Instead, on October 20, 1960, on motion of the county attorney, the complaint, charging the five defendants, therein named, with grand larceny, was dismissed as against the defendant Russell Sadler, *only* and, immediately thereafter, the county attorney filed in the aforesaid Justice of the Peace Court, an entirely new complaint accusing Sadler, *only*, with the offense of unlawfully receiving 930 pounds of copper wire knowing it to have been stolen in violation of the provisions of R.C.M.1947, § 94-2721.

On the following day, October 21, 1960, Russell Sadler again appeared before Justice of the Peace White, without counsel, and entered a plea of "guilty" to the new complaint accusing him of receiving the described copper wire knowing it to have

been stolen, whereupon Sadler was sentenced to pay a fine of $250 and, in the event of his failure to pay such fine, he was sentenced to serve six months in the county jail and in addition thereto to serve one day in jail for each two dollars of such portion of the fine as should remain unpaid.

Sadler promptly paid his fine in full whereupon his entire jail sentence was suspended and he was released from custody forthwith. Thus ended the case against Sadler as well as his punishment.

*District Court Cases.* On October 20, 1960, the day the county attorney dismissed the complaint in the Justice of the Peace Court charging Russell Sadler with grand larceny, said county attorney filed in the District Court for Lewis and Clark County, two separate informations whereby he instituted district court criminal causes Nos. 3195 and 3196.

*Cause No. 3196.* The information in district court cause No. 3196 was entitled, "State of Montana, Plaintiff vs. James Kuhl and Richard Rushford, Defendants." Such information charged that on October 3, 1960, the defendants, Kuhl and Rushford, feloniously stole and carried away approximately 871 pounds of copper wire of the approximate value of $139.36.

When arraigned in criminal cause No. 3196, the defendant, James Kuhl, appeared in open court with his counsel, Geoffrey L. Brazier, Esq., and the defendant, Richard Rushford, appeared in open court with his counsel, P. F. Hooks, Esq., and each defendant entered a plea of "not guilty" of the offense charged.

*Dismissal of Kuhl.* Thereafter, on March 6, 1961, on motion of the county attorney, the district judge, therein presiding, ordered that the information in district court cause No. 3196 be dismissed as against the defendant James Kuhl *alone.* Such dismissal terminated the prosecution of James Kuhl for the offense of grand larceny alleged to have been committed by him on October 3, 1960, as was originally charged in the information filed in district court cause No. 3196.

540

*Cause No. 3196-A.* Also on March 6, 1961, and immediately following the dismissal of the information as against James Kuhl in district court cause No. 3196, as above stated, the county attorney filed a new or amended information against the defendant, Richard Rushford, *alone.* Such amended information was given a new number being designated as district court criminal cause No. 3196-A wherein the county attorney charged that the defendant, Richard Rushford, he being the *sole* defendant named and accused in the new or amended information in cause No. 3196-A, did, on October 3rd, 1960, feloniously steal and carry away approximately 871 pounds of copper wire of the approximate value of $139.36.

The relator, James Kuhl, was never at any time made a party defendant in criminal cause No. 3196-A, which cause was thereafter prosecuted against the defendant, Richard Rushford *alone.*

*Cause No. 3195.* The information filed on October 20, 1960, in district court cause No. 3195, is entitled "State of Montana, Plaintiff vs. James Kuhl, Gordon Clark and Dennis Giles, Defendants." Therein the State of Montana is *the party plaintiff* which party was represented throughout by the county attorney for Lewis and Clark County. The *adverse parties* to district court cause No. 3195 are the three named defendants, viz.: James Kuhl, Gordon Clark and Dennis Giles.

To the charge of which they were accused in the information in cause No. 3195, the defendants, Gordon Clark and Dennis Giles, appearing for their arraignment, without counsel, each entered a plea of "guilty" while the defendant, James Kuhl, appearing for his arraignment with his counsel, Geoffrey L. Brazier, Esq., entered a plea of "not guilty" to the charge so made.

*Change of Plea.* Months later, to-wit, on March 6, 1961, the defendant, James Kuhl, accompanied by his counsel, Attorney Brazier, appeared in open court, and upon leave granted, changed his plea from "not guilty" to "guilty" of grand

larceny as charged in the information filed in district court cause No. 3195.

*Exhibit A.*

The official court reporter's transcript of the proceedings so had on March 6, 1961, on Kuhl's change of plea in cause No. 3195, designated as Exhibit "A" of the answer of the respondent district judge, herein, omitting the title of the court and cause, reads:

"No.3195                    Exhibit 'A'

*"March 6, 1961.*

There appeared in open Court, Thomas J. Hanrahan, County Attorney, and Geoffrey Brazier, attorney for defendant, James Kuhl.

"Mr. Brazier: Your Honor, this is in cause number 3195. The information charges them with the crime of Grand Larceny. Gordon Clark and Giles have plead guilty and Mr. Kuhl has previously entered a plea of 'not guilty', and he comes now and wishes to change his plea at this time, your Honor.

"Court: Very well. The record will show cause [in] number 3195, that the defendant, James Kuhl appeared in open Court this sixth day of March, 1961, together with counsel, Geoffrey Brazier. Do you have some matter to bring before the Court at this time, Mr. Brazier?

"Mr. Brazier: Yes, your Honor. *There is something I would like to say, and—*

"Mr. Hanrahan: *He hasn't changed his plea yet.*

"Court: The defendant wishes to change his plea in this cause?

"Mr. Brazier: Yes, your Honor.

"Court: Very well. Is the defendant in Court?

"Mr. Brazier: Yes, sir.

"Court: Are you James Kuhl?

"Mr. Kuhl: Yes.

"Court: And you have heard what your attorney, Mr. Brazier said?

"Mr. Kuhl: Yes.

"Court: Am I correct in understanding that you wish to withdraw your plea of not guilty to the Information?

"Mr. Kuhl: Yes.

"Court: And how do you plead to the Information?

"Mr. Kuhl: Guilty.

"Court: Very well. *In that connection, before the passing of any Judgment or Sentence, Mr. Brazier, I would like to have a presentence investigation made. I am having it done with the two defendants, Giles and Clark, and what is that man's name, do you know?*

"Mr. Hanrahan: *Rushford?*

"Court: *No, the man at the State Prison.*

"Mr. Hanrahan: *Yes, your Honor, Mr. Brown.*

"Court: *Is he here?*

"Mr. Hanrahan: *No, but he has been advised we wish the investigation.*

"Court: *Fine. Would you have him make an investigation in this regard as I did in the cases of Giles and Clark?*

"Mr. Hanrahan: *Yes, sir.*

"Court: Also, I wish to point out as I did then— Were you there?

"Mr. Brazier: Yes, sir.

"Court: (To Mr. Kuhl) I am not sure I have any legal right to do this, but I am going to let your bond stand at this time, pending completion of the presentence investigation.

"Mr. Brazier: Thank you, your Honor. *If the Court please, am I correct in assuming that at the time set for pronouncing sentence I will be allowed to say some words?*

"Court: *You certainly will. As a matter of fact, I should like to have the benefit of not only a presentence investiga-*

tion, but of the views of defense counsel and counsel for the State. I want to hear everybody on this because this is not the easiest case I have had before me. You will certainly have an opportunity to be heard.

"Mr. Brazier: Thank you, your Honor.

"Court: There being nothing further, Court is adjourned." Emphasis supplied.

The offense to which Kuhl pleaded guilty in Cause No. 3195 was grand larceny.

"Grand larceny is punishable by imprisonment in the state prison for not less than one nor more than fourteen years." Section 94-2706. Revised Codes of Montana of 1947.

*Circumstances in Aggravation or Mitigation of Punishment.* Kuhl's plea of "guilty" to the information charging him with grand larceny rendered him subject to a sentence of "not less than one nor more than fourteen years" imprisonment, depending upon the view taken by the trial judge of the evidence to be presented to him, in open court, showing the circumstances which may be properly taken into view, either in aggravation or mitigation of punishment.

The extent of Kuhl's punishment, (within the minimum and maximum limits set by the statute pertaining to grand larceny, section 94-2706, supra,) was to be determined by the exercise of a sound discretion on the part of the trial judge after the circumstances had been "presented by the testimony of witnesses examined in *open court*" as is specifically provided for in sections 94-7813 and 94-7814, Revised Codes of Montana of 1947, subject to the provisions of Section 94-7831, R.C.M.1947, all of which will be further discussed herein.

As soon as the defendant Kuhl pleaded "guilty" to the information in cause No. 3195, the district judge, *in open court,* addressed Kuhl's counsel, Mr. Brazier, by name and made the *oral suggestion* that the trial court would like to have an in-

vestigation made of the circumstances "before the passing of any judgment or sentence" upon the defendant Kuhl.

The district judge, then and there, *in open court, orally suggested* and stated he was then having such an investigation made as to the co-defendants Giles and Clark, who were jointly charged in cause No. 3195.

From 1895 to April 1, 1955, the effective date of Chapter 194, Montana Session Laws of 1955, pages 432-435, the two statutes at present known as sections 94-7813 and 94-7814, Revised Codes of Montana of 1947, without conflict or confusion, set forth the procedure that must be adopted and applied in presenting to the district court the circumstances which may be properly taken into view, by that court, either in aggravation or in mitigation of the punishment.

*The Law.* The law clearly and specifically provides the procedure that *must be followed* in presenting to the district court the circumstances which may be properly taken into view, by that court, either in aggravation or in mitigation of the punishment. The governing statutes are sections 94-7813 and 94-7814, Revised Codes of Montana of 1947, which are identical with sections 1203 and 1204 of the California Penal Code as originally enacted by the California Legislature in 1872, and as adopted therefrom verbatim by the Montana Legislature in 1895 being Sections 2222 and 2223 of the Montana Penal Code of 1895.

R.C.M.1947, § 94-7813, reads:

"94-7813. (12067) *Circumstances in aggravation or mitigation of punishment.* After a plea or verdict of guilty, where a discretion is conferred upon the court as to the extent of the punishment, the court, upon the oral suggestion of either party that there are circumstances which may be properly taken into view, either in aggravation or mitigation of the punishment, may, in its discretion, hear the same summarily, at a specified time, and upon such notice to the adverse party as it may direct."

R.C.M.1947, § 94-7814, reads:

"94-7814. (12068) *Testimony, how presented.* The circumstances must be presented by the testimony of witnesses examined in open court, except that when a witness is so sick or infirm as to be unable to attend, his deposition may be taken by a magistrate of the county, out of court, upon such notice to the adverse party as the court may direct. No affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court, or a judge thereof, in aggravation or mitigation of punishment, except as provided in this and preceding section.''

The words of sections 94-7813 and 94-7814, supra, require no interpretation. Clearly, they prescribe the steps that *must be taken* to lawfully determine the severity of a sentence about to be imposed as a part of the judicial proceedings in the case after a plea of guilty, and a defendant is entitled to have the provisions of sections 94-7813 and 94-7814 observed and obeyed to the end that his rights thereunder be not foreclosed or denied.

*"Discretion".* In its enactment of section 94-7813, supra, which comprises but a single sentence, the Legislature has twice employed the word *"discretion".*

When first used the Legislature was referring to a criminal action such as district court criminal cause No. 3195, wherein, by virtue of section 94-2706, supra, "a *discretion* is conferred upon the court as to the extent of the punishment" to which the offender may be sentenced which, in the instant case may be "not less than one nor more than fourteen years" depending upon the exercise by the judge of sound discretion in view of such attending circumstances, either in aggravation or mitigation of punishment, as may be presented to such judge by the testimony of witnesses examined, in open court at a specified time, and upon due and timely notice to the defendant and his counsel. Sections 94-7813 and 94-7814, supra.

When the Legislature next used the word *"discretion"* in

section 94-7813, supra, it was providing for the kind or sort of proceeding or hearing which lawfully may be adopted by the trial court when the "circumstances which may be properly taken into view, either in aggravation or mitigation of the punishment" (section 94-7813) are being "presented by the testimony of witnesses examined in open court." Section 94-7814.

The Legislature has authorized the trial court to hear the testimony of such witnesses, *in open court* "at a specified time, and upon such notice to the adverse party as it [the court] may direct."

The Legislature has further provided that the trial court "may, in its *discretion*, hear the same *summarily*" thereby giving to the trial court the authority to exercise its discretion and choose whether to hear *summarily* or to hear *regularly* or *formally*, the testimony of the witnesses but not forgetting for a moment that a *hearing, either summary or regular or formal, must be held* and that "the circumstances *must be presented by the testimony of witnesses examined in open court*" except only "when a witness is so sick or infirm as to be unable to attend" upon the Court. Section 94-7814, supra.

It is clearly *mandatory* that the trial court *must* hold a hearing, either *summary* or *regular* or *formal*, where, in open court, witnesses who have knowledge of the pertinent circumstances, may be sworn, examined and give their testimony in the presence of the defendant and his counsel.

Section 94-7814 most certainly does not confer upon the trial court the choice or the discretion to determine for itself whether the provisions of sections 94-7813 and 94-7814 shall be observed or applied, or whether such provisions shall be ignored, either in part or *in toto*.

*The Punishment.* On April 17, 1961, Richard Rushford, he being the *only* defendant charged in district court cause No. 3196-A and James Kuhl, Gordon Clark and Dennis Giles, being the three defendants jointly charged in district court

cause No. 3195, appeared in open court before the respondent district judge, for sentencing and were then and there sentenced as follows, viz.:

Richard Rushford, two years sentence suspended:

Gordon Clark, one year at hard labor;

Dennis Giles, one year at hard labor; and

James Kuhl, four years at hard labor.

*Relator's Petition.* In the affidavit and petition for writ of supervisory control or other appropriate relief, made and executed by Geoffrey L. Brazier, Esq., for and on behalf of the relator, James Kuhl, and filed in this court to initiate the instant original proceeding bearing Supreme Court No. 10255, it is alleged, *inter alia:*

"5. That on or about the 17th day of April, 1961 * * * at said time and place" of passing sentence and "based upon conferences in chambers with unspecified parties, the Judge had arrived at his sentences based upon the information (erroneous in fact) that your Relator, James Kuhl, had the most unsavory criminal record and was the 'ring leader' of the group then being sentenced. * * *

"7. That in doing the things hereinabove set forth, to-wit: Basing his sentence upon private conferences with unspecified parties and denying your Relator the right to present evidence in mitigation of sentence in open court, the above-named Judge of the District Court, not only acted unlawfully, arbitrarily, tyrannically and with a disregard of the rights of your Relator, but denied the Relator the constitutional right of counsel and the statutory right to present evidence in mitigation of his sentence while rendering the discriminatory sentences above specified.

"8. That your Relator has new evidence which was apparently not available to the Court in arriving at his sentences, to prove that two of the other named joint felons in the above-specified criminal enterprise had prior felonies on their respective records, whereas your Relator did not, and that if

there was a 'ring leader' in said criminal enterprise, it was Dennis Giles and not your Relator."

*Respondents' Answer.* In the instant original proceeding No. 10255, the respondent District Judge, on May 17, 1961, filed, on behalf of himself and his court, an answer to the relator's above "Affidavit and Petition for Writ" wherein the respondents alleged, *inter alia:* That "the court pronounced judgment and that thereafter Respondent court permitted defense counsel, Geoffrey Brazier, to state everything which he apparently wanted to say with reference to his client, the relator, Kuhl. * * *

"Answering paragraph 7 of said Petition, generally and specifically denies all the allegations therein contained and in this connection states that this answering Respondent did, to the best of his ability, pronounce judgment which was proper in said cause, save and except that your Respondent felt at the time that he was being too considerate to Relator Kuhl, and that, *among other things, your answering Respondent was furnished with a report made by the Montana Board of Pardons and Parole, with a report from the Helena Police Department, and a copy of the Sheriff's records, which are attached as exhibits hereto."* Emphasis supplied.

*The Exhibits.* Five separate written exhibits are referred to in and made a part of the duly verified answer of the respondent district judge who has lettered two of the exhibits as "A" and "B" and the remaining three exhibits we have lettered as C, D and E.

Exhibit "A" is a copy of the official court reporter's transcript of the proceedings and hearing had, in open court, on March 6, 1961, wherein the defendant Kuhl changed his plea to "guilty" following which the district judge directed the county attorney to have one, Douglas F. Brown, investigate the circumstances in aggravation or mitigation of the punishment of the defendant Kuhl.

Exhibit "B" is a copy of the official court reporter's tran-

script of the proceedings and hearing had, in open court, on April 17, 1961, wherein occurred the joint allocution of the defendants Rushford, Clark, Giles and Kuhl, followed by the passing of sentence upon each of the four defendants. This allocution ceremony is governed by the provisions of sections 94-7810 and 94-7811, Revised Codes of Montana of 1947.

Exhibit C consists of a single, unsigned, typewritten sheet of legal cap size paper, which, in its entirety reads as follows:

"Summary of Sheriff's Report

on James H. Kuhl

"1/31/53 — Held for City Police. Released 1/31/53.

"7/8/57 — Third degree assault. Posted $200.00 bond. Case dismissed.

"12/24/57 — Abandonment of minor children. Disposition not shown.

"10/7/60 — Grand larceny. Posted $2,500.00 bond."

Exhibit D consists of two, unsigned typewritten pages of legal cap size paper, bearing the caption "Summary of Report from Helena Police Department."

There is nothing whatever to identify the person or persons who compiled, typed or offered or presented to the court or the judge thereof either Exhibit C or Exhibit D or which disclose either the date or the place either exhibit was presented to or received by the respondent judge.

Exhibit E is a photostatic copy of two typewritten letter-size sheets of paper. The first sheet bears a printed letterhead reading: "State of Montana, Board of Pardons Division of Probation and Parole, Pre-Sentence or Field Investigation". The exhibit comprises eight separately numbered paragraphs wherein the relator, James Kuhl, is referred to as the "subject". This Exhibit E being the respondent judge's fifth exhibit concludes as follows:

"8. *Summary and conclusions:* Subject has a somewhat cocky attitude and of the four persons involved in this theft seems the least concerned. It also seems likely that subject

was the leader or promoter of this theft. His arrests in Helena indicate subject has spent considerable time drinking and brawling in the local bars. This fact together with his extremely poor employment record indicates subject has lead [sic] a wasteful life and his present attitude shows little possibility of a favorable change.''

*Exhibit "B".* The official court reporter's transcript of the proceedings had on April 17, 1961, in cause No. 3185, designated as Exhibit "B" in the answer of the respondent district judge, herein, omitting the title of the court and cause, reads:

*"Exhibit 'B'*

*"April 17, 1961*

''There appeared in open Court, Thomas J. Hanrahan, County Attorney, Geoffrey Brazier, attorney for defendant, James Kuhl, and Gene A. Picotte, attorney for defendant, Richard Rushford, and defendants Gordon Clark and Dennis Giles who were not represented and who had waived counsel in open Court.

''Mr. Hanrahan: May it please the Court, in cause number 3195, this is the time set for sentencing.

''Court: Yes. This is in regard to the cases of the State of Montana versus James Kuhl and Gordon Clark and Dennis Giles and Richard Rushford. The record will show that the several defendants are present in open Court in person and with counsel. That heretofore and that at different times and different dates they have each and all plead guilty to an Information, all of which relates to the unlawful taking of wire, copper wire, as I recall, and the partial destruction of power lines up near Marysville, Montana. *Ordinarily, gentlemen, I would ask for statements from the County Attorney and the other parties with regard to punishment, either in mitigation or otherwise, but in this particular case I have had this matter before me on several occasions and I think I know what the picture is about as well as can be presented. For some time past*

*I have been withholding action on this pending a complete investigation by the State Board of Parole and Probation. Mr. Brown of that office furnished this Court recently with a report on each of the defendants and so I will undertake to impose penalty at this time without further action on the part of counsel, if that is agreeable. I may say, I have discussed this with counsel previously and privately and what I am about to do is a result of a rather lengthy meditation on the subject.* The four defendants will stand. I want to ask, first of all, is there any legal reason why judgment should not be pronounced at this time? [See R.C.M.1947, §§ 94-7811 and 94-7812].

"Mr. Brazier: No. (County Attorney Hanrahan and Gene Picotte had no comments.)

"Court: Hearing none, the Court makes the following observations. *I am satisfied with my investigation that defendant James Kuhl was the, shall we say, the 'ring leader' of this episode and it was largely through his leadership that these robberies took place* and I feel that in view of his past record, which while it is not too good, he certainly has a record here over a period of several years—I feel that the past record warrants that you be sentenced to prison—It is the Judgment and Sentence of this Court—Who is Kuhl, are—

"Mr. Kuhl: Yes, Sir.

"Court: It is the Judgment and Sentence of this Court that you be confined to the State Prison at Deer Lodge, Montana, at hard labor for a period of four (4) years and remanded to the custody of the Sheriff for immediate execution of this sentence. Now, with regard to Dennis Giles and Gordon Clark. I have before me the crime list of each of you. Giles, yours is not a particularly savory history and it is about time that you began to grow up. Here is a series of matters that certainly are not to your credit at all. However, from my investigation into this

matter, I am satisfied that you were brought into this matter more because you just happened to be there than anything else and I think that is also true of Clark and, incidentally, Clark, you have only two matters here of record, *only one prior which is not very serious*. I am satisfied that each of you had guilty knowledge that you were taking something that did not belong to you and you knew you shouldn't be there under any circumstances. Therefore, it is the Judgment and Sentence of this Court that you, each of you be sentenced to the State Prison at Deer Lodge, Montana, at hard labor for a period of one (1) year and remanded to the custody of the Sheriff for immediate execution of this sentence. Now, with regard to Rushmore—

"Mr. Hanrahan: Rushford.

"Court: Rushford, you seem to have a knack of getting into trouble. I have looked rather favorably upon the situation insofar as you are concerned, and I am inclined to think it is true that you got into this matter unintentionally in that you went up there thinking you were going out to the mountains to pick up some junk, or whatever it may be. I don't think that your intelligence was the very best in that regard. You have been in trouble before. All things considered, however, I am going to consider particularly the fact that for the past 5 years you have kept out of trouble and have been partially employed. It is the Judgment and Sentence of this Court that you be confined to the State Prison at Deer Lodge for a period of 2 years at hard labor. However, in view of the circumstances here I am going to suspend that sentence on your good behavior and you are remanded to the custody of the State Board of Pardon and Parole at Deer Lodge for the requirements with reference to parole. Now, in that connection, I want you to know that if you are brought before me or any other judge during that period of 2 years

from now for any serious offense at all, you will have to serve this 2 year sentence as of that time. Now, I don't mean for a parking ticket or anything of that kind. If you will just simply keep yourself out of trouble, which is what almost all citizens do, no burden is being placed upon you at all. Very well, with those remarks, Judgments will be prepared accordingly and the prisoners delivered to the Sheriff. Court stands adjourned.

"Mr. Brazier: *I'd like to make a few comments on behalf of my client, and I thought I would have an opportunity to discuss this matter with you, and as far as I know, you said in your remarks that you discussed this matter in chambers or in private with all of the people, a number of people. As far as I know, nobody discussed this matter on behalf of my client, and I think there are a number of things that should be called to the Court's attention that I think the Court should consider before making this Judgment final.* You are, for example, making my client four times worse or as bad as any of the others and I'd like, if I may have the Court's permission, to speak at this time.

"Court: Surely.

"Mr. Brazier: Very well. Now, according to the remarks, *I understand that some consideration is being given to Mr. Giles and Mr. Clark because of their cooperation in this matter?*

"Court: *No. None whatsoever. In other words, Mr. Brazier, you are saying in your opinion they 'copped out', is that it?*

"Mr. Brazier: *Yes, Sir.*

"Court: *That is not the situation at all.* The reason for the lower sentences afforded these two men is because the purpose of punishment is to deter and not to get revenge, and these two, *I am satisfied from the records and from the statements and what the Parole Board has repre-*

sented to me, and in the record, I am satisfied they had guilty knowledge, but they were kind of taken along on this thing. That is the way I feel about it. Now, I may be wrong.

"Mr. Brazier: Jim, did the Parole Board ever talk to you about this?

"Mr. Kuhl: I certainly wasn't the ring leader.

"Court: *That is the impression I get and that is the way I have to go about it.*

"Mr. Kuhl: *We were all 3 together. I mean, I never You can ask him if I was the ring leader.*

"Mr. Brazier: The only difference I can see between or among these 3 parties is that 2 of the parties were apprehended in Minnesota and made voluntary confessions. At this time, I would like to point out that my client has never once stated to me or any other party that he did not take part in this particular activity. *But the reason he did not plead guilty immediately was that there appeared to me to be a substantial defense by way of this entirely abandoned property, which I think the Court is satisfied should be advised on behalf of any interested defendants.* I will review the history of my investigation to show this wasn't some idle act on my part. When I first got into this case, *I talked to the patrolman for the Montana Power Company and he told me he hadn't patrolled that line for a number of years. Mr. Kuhl said the line was down,* which means that none of the 3 mines will have power and the *Lines Department up there hasn't made a shipment in the last 11 years except for one 5 ton truck for one of the mines. I checked and neither the mine owners or the Montana Power ever declared this property on their tax list.* Neither one, I also determined as of last fall, *none of the mine owners paid their taxes for the last 3 years and I checked with the Bureau of Land Management and the Forest Service here in determining that some of those lines were going*

*across—Nobody has ever taken a right of way across those lands. Now, these things lead me to believe that there must be a worthwhile defense because somebody up there is not following up and acting like he was a property owner,* only just in the last week before this was to go to trial. I had an opportunity to talk to Bob O'Connell, one of the County Commissioners, in an effort to get some expert testimony as to representation of areas not operating and he told me that some of the mines did pay up their taxes in the last week, which I verified, after 3 years. He told me that one of those lines was lost a week before. Now, so far as the Montana Power Company goes I don't think that enters into any consideration. They are right and somebody did steal something from that property, but there is no reason I can't follow up on this and make a defense on it, because I honestly think that is somebody's property and that there was a theft, but *up until last week there was genuine doubt in everybody's mind as to whether it was anybody's property. I want the Court to realize that the reason Mr. Kuhl didn't cooperate, didn't enter a guilty plea was strictly on the advice of myself, I think in good faith and I think you as Judge, wouldn't have it any other way, but the man is entitled to fair investigation in the executing of his case before it goes to trial.*

"Court: *Well now, counsel, you are not to be criticized in any sense for you handled this just as well as it could be handled, but the defendant entered a plea of guilty here.*

"Mr. Brazier: *The only thing the defendant understood is that all 4 of these parties were in it together from the beginning.*

"Court: Well, I know you can not speculate one way or the other but, Mr. Kuhl plead guilty to the crime and that seems to put an end to it.

"Mr. Brazier: Very well.

"Court: *I had a rather very careful investigation made of this. I have not discussed, nor do I intend to discuss all of my reasons for imposing punishment which I have just imposed. Perhaps I am wrong, but you know judges are human beings and we do the best we can. I still feel this is proper with these 4 defendants under the circumstances. That is the way I feel about it. I have not done this hastily. I have had it before me for quite some time and as I say, this is not a hasty ruling on my part and it is not a case of just somebody bringing in a plea of guilty and judgment being imposed forthwith. I have done an independent investigation, as I said, in an effort to serve justice,* Mr. Brazier, and as far as you are concerned I am sure you can understand my position.

"Mr. Brazier: Very well, your Honor, *I was hoping that perhaps I could bring this to light.*

"Court: Very well, Court stands adjourned." Emphasis supplied.

Turning now to a discussion of the reasons behind these two sections and the interpretation which has been given them or like statutes during the years.

In People v. Giles, 70 Cal.App.2d Supp. 872, 161 P.2d 623, 624, the court said:

"The defendant, convicted on a charge of having used force and violence upon the complaining witness, was sentenced to serve six months in the county jail. We have concluded, upon his appeal * * * that the judgment should be reversed with directions that the defendant be resentenced, because, in determining the severity of the sentence to be imposed, *the trial judge erred in listening to and being influenced by accusations made against the defendant outside of court. The error referred to is not a trivial one.* A person convicted of a traffic offense or of another of the many misdemeanors which have been created by state laws and local ordinances, has a real concern in the sentence which follows. Will it impose a light or a stiff fine?

Or is there to be a term in jail instead of a fine? *It is a matter of more than passing interest, therefore, to know whether or not the trial judge may properly take into consideration, in determining the sentence, reports against the defendant which come to the judge privately neither in open court nor known to the defendant, and which he is given no opportunity to answer.* \* \* \*

"Standing convicted of the crime of battery, the defendant was subject to a fine (up to one thousand dollars) or to a jail sentence (not exceeding six months) or to a combination of the two. Section 243, Penal Code. To aid it, no doubt, in arriving at a just determination of the proper sentence to impose, the trial court referred the matter to the county probation officer for a report, and set the time for sentencing the defendant ahead twenty days. \* \* \*

"*That the trial judge listened to accusations made against the defendant out of court, and that they largely influenced his judgment, is clear from the events which took place at the time set for sentencing the defendant.* 'I will say in the beginning,' the trial court prefaced the proceedings, 'that I have received a great many telephone calls, letters and personal requests in this matter, and all of them so far have been against the defendant. I will read one letter from the probation officer's report, which duplicates most of the information I have received in an unsatisfactory hearsay sort of manner. I have tried my best to avoid hearsay testimony and not base anything on just rumor and hearsay and unreliable statements. I want to assure you in the beginning that the only purpose I have in this case is to try to rescue San Antonio Township and the City of Vernon from what most people seem to think is a bad situation.' \* \* \*

"\* \* \* Our attention is centered upon an inquiry into the legal propriety of the practice of a trial judge who, in making up his mind as to the punishment to be imposed upon a con-

victed defendant, receives and gives heed to charges leveled at the defendant out of court and out of the defendant's hearing.

"In section 1204, Penal Code, we discover the legislature expressly condemning the practice followed by the trial court. That section, referring to circumstances which may either aggravate or mitigate the punishment, states: 'The circumstances must be presented by the testimony of witnesses examined in open court * * *. No affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court, or a judge thereof, in aggravation or mitigation of the punishment, except as provided in this and the preceding section.' * * *

"In the first place, 'The several sections of this code which declare certain crimes to be punishable as therein mentioned, devolve a duty upon *the court* authorized to pass sentence, to determine and impose the punishment prescribed.' Section 12, Penal Code. 'Whenever in this code the punishment for a crime is left undetermined between certain limits, the punishment to be inflicted in a particular case must be determined by *the court* authorized to pass sentence within such limits as may be prescribed by this code.' Sec. 13, Penal Code. *The words of these two sections (to which we have added the emphasis) need no interpretation. Plainly they stamp the steps to be taken to determine the severity of a sentence as a part of the judicial proceedings in the case.* * * *

"* * * The fact that the hearing is not a trial in the full technical sense and is not governed by the same strict rules of procedure as a trial, does not mean, however, that the facts needed by the court to enable it to perform its duty may be picked up by the judge at the club or on the street. In People v. O'Brien, 1932, 122 Cal.App. 147, 155, 9 P.2d 902, 905, we find this statement: 'Notwithstanding the fact that it has been decided that the hearing which may be conducted by the trial court for the purpose of determining the degree of the offense "is not a trial," nevertheless the only means by or

through which the court is authorized to reach a conclusion in the matter is by the aid of evidence. People v. Chew Lan Ong, 141 Cal [550], 551, 553, 75 P. 186, 187, 99 Am.St.Rep. 88; People v. Bellon, 180 Cal. 706, 182 P. 420, 421.' In the first case cited in the text just quoted, People v. Chew Lan Ong, the defendant had pleaded guilty to the charge of murder and had been sentenced to death. The contention was made, on appeal, that the trial judge had no power to determine the degree of the crime for the reason that the section which purported to grant the power (section 1192, quoted above) failed to provide the 'mode whereby the court is to reach its determination.' [141 Cal. 550, 75 P. 187.] The supreme court disposed of this contention with these words, pertinent to our problem, 141 Cal. at page 552, 75 P. at page 187, 99 Am. St. Rep. 88:

" 'Jurisdiction to determine the matter is, however, expressly conferred on the court by the section. This means that there shall be a judicial determination, and where power is especially conferred upon a court of general jurisdiction to determine a particular question, and no special mode for that determination is pointed out, the jurisdiction conferred necessarily implies authority in such court to call to its assistance in determining the particular question, the same aid as is usually employed by it in reaching a judicial determination in other cases.

" 'The universal aid is evidence. This was the means employed by the lower court in determining the degree of crime in the case at bar. It is the only means by which a judicial determination can be had, and was the means which it was contemplated by the Legislature should be invoked by the court. * * *'

"Our conclusion that the determination of the sentence to be imposed upon a defendant convicted of a misdemeanor should not be based even in part upon statements which come to the ear or eye of the trial judge in an unofficial way, finds further

support in these two legal principles: the defendant has a right to be present when judgment is imposed upon him, and he has a right to be confronted by the witnesses who have accusations to make against him. As to the first of these principles, again we find the Penal Code silent, but the common law is not silent. While it is true that 'In this state the common law is of no effect so far as the specification of what acts or conduct shall constitute a crime is concerned. Section 6, Pen.Code; 7 Cal.Jur. 841', People v. Whipple, 1929, 100 Cal.App. 261, 262, 279 P. 1008, 1009, with respect to criminal procedure, 'The common law is in force as law in this state in the absence of statutory provisions at variance with the common law.' Ex parte Hudspeth, 1929, 100 Cal.App. 478, 479, 280 P. 179, 180; Political Code, sec. 4468. Looking, then, to the common law, we find the general rule to be that in the absence of a statute to the contrary, one convicted of a misdemeanor for which a jail sentence may be imposed has the right to be present when the judgment is rendered. 24 C.J.S., Criminal Law, § 1574b, p. 79, 15 Am.Jur. 113; 1 Bishop's New Crim.Procedure, 2d Ed., 241. One of the purposes of requiring that the defendant be present may well be to give him an opportunity to show that accusations made against him, other than the one of which he stands convicted, are without foundation, and a chance to object to the consideration of improper evidence. In the latter connection, see People v. O'Brien, supra, 122 Cal.App. 147, 157, 9 P.2d 902, 905. * * *

"'We find two decisions from sister states which condemn the practice followed by the trial court in the present case as being in violation of the fundamental right of a person to be confronted by the witnesses against him. The first of these is State v. Simms, 1925, 131 S.C. 422, 127 S.E. 840, where the defendant had been sentenced to four months' imprisonment and a $500 fine for a violation of a state law. In sentencing the defendant the trial court remarked: 'Mr. Simms, you must be a bad man. A number of people from your commu-

nity have been to see me at my office about you, and they have all spoken against you. I have been impressed with the fact that no one has come to see me to speak a good word in your behalf.' The supreme court of South Carolina set the sentence aside and remanded the case to the trial court for a resentence, stating that they did so in reliance upon a prior decision wherein they had said that the information necessary to pass sentence should have been obtained in open court or in the presence of the defendant or his counsel, and that the defendant 'has a right that everything appertaining to the case, in the way of evidence affecting the case, be open and above board and public * * *'."

In Commonwealth v. Johnson, 348 Pa. 349, 35 A.2d 312, 313, the defendant Harry Johnson pleaded guilty to an indictment charging him with murder. Thereafter he was formally adjudged guilty of murder in the first degree and sentenced to death. On the defendant's appeal from the judgment and sentence, the Supreme Court of Pennsylvania, speaking through Chief Justice Maxey, in part, said:

"The record also discloses that before this formal adjudication the court received a large amount of information about the defendant's criminal record. Some of this was of a documentary character and some of it was oral. In the remarks made by Judge Sloane before he imposed sentence he said, inter alia, 'We talked with Warden Smith, of the Penitentiary, Dr. Baldi, of the County Prison, and the parole office of the Penitentiary. No one has a good word for him—he is troublesome and dangerous. We got and examined the penitentiary report of his misconduct in prison; it is not a good one. In 1934, this defendant hit another inmate with a smoking stand, and cut that inmate's forehead; the guard found the latter inmate to blame.' Several other statements of a similar tenor were made at the same time by Judge Sloane. The record is silent as to whether or not this information which the court received as to the defendant's record entered into the court's

deliberations in fixing the degree of murder of which the defendant was guilty. A statement by Judge Alessandroni indicates affirmatively that in fixing the degree of the crime of which the defendant was guilty the court considered the defendant's record. * * *

"It is a prisoner's constitutional right in this Commonwealth 'to meet the witnesses face to face' ·(Sec. 9, Declaration of Rights Const.P.S.). In Com. v. Corsino, 261 Pa. 593 at page 598, 104 A. 739, 740, we held: 'It is the inherent right of the prisoner in a capital case to be present at every stage of the proceedings from the arraignment to the rendition of the verdict. Neither court nor judge can take any step affecting his right in his absence.' In Prine v. Com., 18 Pa. 103, Chief Justice Gibson said: 'It is undoubtedly error to try a person for felony in his absence, even with his consent. It would be contrary to the dictates of humanity to let him waive the advantage which a view of his sad plight might give him by inclining the hearts of the jurors to listen to his defence with indulgence. Never has there hertofore been a prisoner tried for felony in his absence.' In Com. v. House, 6 Pa.Super, at page 113, Presiding Judge Rice said: 'It is better that this case should be tried a third time than that such a precedent [as having the defendant absent during any part of his trial] should be established.'

"* * * As was said in Reagan et ux. v. Reading Co., 126 Pa.Super. 175, 184, 190 A. 412, 415: 'We can look only to the record in this case * * * and we cannot permit conjecture to supply what the evidence does not contain.'

"This record does not show that the prisoner was adjudged guilty of murder in the first degree before any evidence of his criminal record was received in his absence. The conclusion is inescapable that when the court fixed the degree of the defendant's guilt of murder his criminal record received in his absence was before it. The granting of a new trial is therefore imperative. As Justice Miller said in Ex parte Lange, 18

Wall. 163, 178, 85 U.S. 163, 21 L.Ed. 872: 'There is no more sacred duty of a court than * * * to maintain unimpaired those securities for the personal rights of the individual which have received for ages the sanction of the jurist and the statesman.'

"We are reversing this judgment not because ex parte testimony was received by the court before it determined the sentence; we are reversing the judgment because the record does not show affirmatively that no ex parte evidence was received by the court before it determined and declared the degree of the defendant's guilt of murder. * * *

"* * * A judge whose duty it is to determine the proper sentence imposed on those convicted of crime cannot be expected to limit himself to only that which appears in the record of the trial of the prisoner. It is to the benefit of society and it may be of benefit to the prisoner, to have the sentencing judge consider facts other than those adduced at the trial. Such facts might militate in a prisoner's favor or they might militate against him.

"However, when a judge is faced with the duty of determining whether or not a convicted murderer is to be sentenced to death or life imprisonment the seriousness of the problem is such that a judge who is possessed of that zeal to do justice which characterizes the just judge, will as far as is practicable, give the defendant an opportunity to confront the witnesses against him and to offer evidence in his own behalf. Such a procedure if followed will be informative to the understanding and enlightening to the judgment, of the sentencing tribunal."

In People v. Neal, 97 Cal.App.2d 668, 218 P.2d 556, 560, the Superior Court of Los Angeles County, sitting without a jury convicted the defendant Neal of attempts to murder and of arson. The defendant immediately waived time for pronouncing sentence. The trial court then made inquiry of the defendant as to his history and habits and sentenced him to

state prison for the time prescribed by law on each. Thereupon, according to the appellate court's opinion, the following occurred:

" '[The court] Now I will hear from either or both counsel on the question of whether the sentences should run concurrently or consecutively. I will hear from the District Attorney first. * * *

" 'Mr. Sten: [Deputy District Attorney] Your Honor has properly denominated this crime as a fiendish crime. * * * This defendant, in my opinion and from the investigation of this case and the developments of it and the hearing of the testimony here in court, is a dangerous man of definite criminal tendencies. He has a long police record going back to the time he was a juvenile, when he was made a ward of the Court for stealing a car, for molesting a four year old child, for stealing a bicycle, and for other crimes. He was also arrested on a 288 charge upon which no complaint was filed; so that might be ignored * * *

" 'I have taken your Honor's time for this one purpose: I believe that this defendant should be kept in prison a long time. I believe that when he gets out of prison, which he will some day, he will go right back into leading a criminal life. * * *' Defendant, on cross-examination, had admitted the conviction of theft of an automobile when he was a juvenile.

"The attorney for the defendant then stated that he knew nothing about some of the matters stated by the district attorney, and argued that the sentences should run concurrently. * * *."

In condemning the foregoing procedure the California Appellate Court said: (97 Cal.App.2d pp. 676, 671, 218 P.2d 561.)

"The court was required to direct whether the sentences should run concurrently or consecutively. Pen.Code, sec. 669. In this state the statute prescribes the rules of evidence applicable to the manner in which a judge may obtain information

to guide him in the imposition of sentence upon an already convicted defendant. Penal Code section 1204 prescribes the evidence that may be received in aggravation or mitigation of the punishment to be imposed. It provides: 'The circumstances must be presented by the testimony of witnesses examined in open court, * * * . No affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court, or a judge thereof, in aggravation or mitigation of the punishment, except as provided in this and the preceding section.''

''Section 1204 requires the court in determining the consequences of guilt to receive *evidence* either in mitigation or aggravation of the punishment to be imposed. 'To this end any testimony bearing upon the character or the antecedents of the convicted person—whether he has theretofore been of good or bad character or borne a good or bad reputation or been previously convicted of some offense against the law—may be presented to the court.' People v. Rudolph, 28 Cal. App. 683, 685, 153 P. 721, 722. The section expressly condemns the practice followed in the present case. People v. Giles, 70 Cal. App.2d Supp. 872, 879, 161 P.2d 623.

''The defendant has a right to be present when judgment is pronounced against him, and he has a right to be confronted with the witnesses who have accusations to make against him. Pen.Code, sec. 1193; People · v. Giles, supra, 70 Cal.App.2d Supp. at page 882, 161 P.2d 623. The statement of the district attorney, wholly unsupported by any evidence, was highly inflammatory and prejudicial. If any of the matters referred to by the district attorney was true, it should have been presented to the court in the form of evidence. The statute demands that the duty of determining the question of aggravation or mitigation of punishment be performed with scrupulous fairness to the defendant. The fact that the defendant here had been convicted of 'a fiendish crime' did not justify departure from the command of the statute.''

The Sixth Amendment to the Constitution of the United States, in part, provides: "In all criminal prosecutions the accused shall enjoy the right to a * * * public trial * * * to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

Section 16 of Article III, of the Constitution of Montana, in part, provides: "In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel; * * * to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf * * *."

Section 94-4806, Revised Codes of Montana of 1947, reads:

"94-4806. (11611) *Rights of defendant in a criminal action.* In all criminal prosecutions the accused shall have the right—

"1. To appear and defend in person and by counsel;

"2. To demand the nature and cause of the action;

"3. To meet the witnesses against him face to face;

"4. To have process to compel the attendance of witnesses in his behalf;

"5. A speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed, subject to the right of the state to have a change of venue for any of the causes for which the defendant may obtain the same."

*Chapter 194, Laws of 1955.* Montana's Thirty-fourth State Legislative Assembly enacted Chapter 194, Session Laws of 1955, pages 432-435, entitled:

"An Act to Amend Sections 94-7821, 94-7822, and 94-7824 of the Revised Codes of Montana, 1947, by Substituting the Words 'Board of Pardons' for 'Board of Prison Commissioners' and Referring to the Provisions of the Probation, Parole and Executive Clemency Act; Providing for Investigation by Probation and Parole Officers Prior to Sentencing an In-

dividual Convicted of a Crime, If Deemed Necessary by the Court; Providing the Sentences Courts are Authorized by Law to Impose; Requiring Courts to Transmit to Board of Pardons Certain Statistical Data; Repealing Sections 94-7823, 94-7825, 94-7826, 94-7827, 94-7828, 94-7829 and 94-7830 of the Revised Codes of Montana, 1947, and All Acts and Parts of Acts in Conflict Herewith; Providing a Saving Clause; and Providing an Effective Date Clause.''

Chapter 194, supra, makes no reference to either section 94-7813 or section 94-7814 and it is quite apparent that such chapter has to do with paroles, pardons, suspensions and probation and that it concerns itself with the probation powers of the district courts, but the Act fails to definitely limit itself to such aspect as is made manifest by its employment of the words: ''Providing for Investigation by Probation and Parole Officers Prior to Sentencing an Individual Convicted of a Crime, If Deemed Necessary by the Court.''

Chapter 194, supra, which was approved March 4, 1955, and became effective from and after April 1, 1955, contains nine separately numbered sections.

Section 5 of the Act is listed and carried in the cumulative pocket supplement to Vol. 8 of the Revised Codes of Montana of 1947, as section 94-7831, R.C.M.1947, and reads as follows:

''94-7831. *Investigation.* No defendant convicted of a crime, the punishment for which may include imprisonment in the state prison, shall be sentenced or his case otherwise disposed of, until a written report of investigation by a probation and parole officer shall have been presented to, and considered by, the court, unless the court deems such report unnecessary. The court may, in its discretion, order a pre-sentence investigation for a defendant convicted of any lesser crime or offense. Whenever an investigation is required, the probation and parole officers shall promptly inquire into the circumstances of the offense, the attitude of the complainant, the social history, criminal record, and the present conditions of

568

the defendant and his immediate family. All local and state police agencies shall furnish to the probation and parole officer such criminal records as the probation and parole officer may request. Where, in the opinion of the court or the investigating authority, it is found desirable, such investigation shall include a physical and mental examination of the defendant. If a defendant is committed to an institution, the investigating agency shall send a report of such investigation to the institution at the time of commitment.''

By the plain terms of section 94-7831, supra, no defendant convicted of a crime punishable by imprisonment in the state prison shall be sentenced or his case otherwise disposed of until a written report of investigation has been presented to and considered by the trial court, unless that court deems such report unnecessary.

In the instant case of the relator Kuhl, the trial judge orally requested an investigation which was had and whereof a written report thereon was requested by and furnished to the trial judge, which report, under the provisions of section 94-7831 the judge was entitled to consider. However, keeping in view, as we must, the provisions of sections 94-7813 and 94-7814, supra, the question arises: Was the trial judge authorized to disregard the mandates of the two-last mentioned sections and to proceed to pass sentence upon the defendant Kuhl without giving him or his counsel an opportunity to learn or know any of the circumstances set forth in the investigator's report and without giving either the defendant or his counsel an opportunity to rebut or refute any of the representations therein contained?

We are of the opinion that sections 94-7813, 94-7814 and 94-7831, supra, must be read together and harmonized and that if and when the trial judge requests the report provided for in section 5 of Chapter 194, Session Laws of 1955 [R.C.M.1947, § 94-7831, supra], then he must be governed by the provisions of sections 94-7813 and 94-7814, supra.

■ *Oral Suggestions.* Exhibit A, being the official court reporter's transcript of the district court proceeding had on March 6, 1961, clearly reveals that it was the trial judge who, with the acquiescence of the county attorney representing the *party plaintiff*, State of Montana, as its counsel, invoked the provisions of sections 94-7813 and 94-7814, supra, and set in motion the procedure and proceedings therein provided.

Even *before* the defendant Kuhl had withdrawn his original plea of "not guilty" and *before* he had entered his plea of "guilty" and, obviously in anticipation of both events, the county attorney advised the investigator, Mr. Brown, that "we wish the investigation", but neither the county attorney nor the trial judge could invoke the provisions of sections 94-7813 and 94-7814, nor could they proceed thereunder until *after* a plea of "guilty" had been entered by Kuhl.

However, just as soon as the defendant Kuhl had withdrawn his original plea and entered in lieu thereof a plea of "guilty" the trial judge immediately took over and, in open court, made the *oral suggestion,* that before the passing of any judgment or sentence upon Kuhl, the judge would like to have a presentence investigation made as to the defendant Kuhl. The trial judge then made the further *oral suggestion* and direction that the county attorney have Mr. Brown "make an investigation in this regard as" the judge "did in the cases of Giles and Clark" with which suggestion and direction the county attorney promptly and fully complied, whereupon the defendant Kuhl became "the adverse party" as that term is employed in sections 94-7813 and 94-7814, supra.

Thereafter it became and was the duty of the trial judge to observe the provisions of sections 94-7813 and 94-7814, and to see that such provisions were complied with, and that pursuant thereto, a hearing, either *summary* or *regular* or *formal* in character, be scheduled and set for a time and place certain; that due notice thereof be given to "the adverse party"

Kuhl and his counsel and that when such hearing be ordered that it be held *in open court* and in the presence of *the adverse party,* Kuhl and his counsel.

No such notice was ever given to either Kuhl or his counsel and no such public hearing was ever scheduled or held.

Precisely one month elapsed from March 6, 1961, the date whereon the trial judge directed the county attorney to have Mr. Brown make his investigation of the circumstances attending the defendant Kuhl, until April 6, 1961, the date on which Mr. Brown dictated his typewritten report (Exhibit E) setting forth the representations and conclusions resulting from his investigation.

In his answer herein the respondent trial judge alleged, *inter alia,* that he was furnished with Mr. Brown's aforesaid report together ''with a report from the Helena Police Department, and a copy of the sheriff's records, which were attached as Exhibits'' to such answer.

Neither the defendant Kuhl nor his counsel were permitted to inspect, examine, read, ascertain, or know the contents of any of these written exhibits at any time prior to the pronouncement of sentence upon Kuhl or at any time prior to the filing, on May 17, 1961, in this court and in this original proceeding, of the answer of the respondent judge.

''The circumstances must be presented by the testimony of witnesses examined in open court * * *''. So says the first sentence of section 94-7814, supra.

No testimony whatever was presented in the trial court in Kuhl's case.

''No affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court, or a judge thereof, in aggravation or mitigation of punishment, except as provided in this [section 94-7814] and [the] preceding [section 94-7813] section.'' So says the concluding sentence of section 94-7814.

Mr. Brown's investigation produced no competent witness

and no admissible evidence of the circumstances, either in aggravation or in mitigation of Kuhl's punishment.

The naked unsworn representations and recommendations set forth in the investigator's unsigned report *privately offered* to and *privately received* and adopted by the trial judge do not measure up to the requirements of section 94-7814, supra. They are not evidence.

A mere reading of the respondent judge's answer herein and of the colloquy between the judge and the defendant Kuhl's counsel in the quoted proceedings had on April 17, 1961, conclusively establishes that when deciding upon the extent of Kuhl's punishment, the trial judge received and was greatly influenced by the representations, both verbal and written, supplied to him and which purport to reveal circumstances in aggravation of relator's punishment.

In view of such facts it becomes our duty to correct, as far as proper, the prejudicial errors committed against the relator immediately after his plea of ''guilty'' for at all times since the passing of sentence upon him on April 17, 1961, the relator has been confined in the state prison serving out his sentence.

Justice *under the law* is the due of both the accuser and the accused.

To this end it is the duty of the judges to work for equal justice *under the law*, even ''to the least among us.''

Accordingly under the authority of section 94-8210 and this court's decision in State of Montana v. Brown, 136 Mont. 382, 351 P.2d 219, the judgment convicting the relator of the offense to which he plead ''guilty'' is affirmed, but the sentence imposed is modified and reduced to one year in the state prison effective from and after April 17, 1961, and, with such good time allowance and reduction as the relator's conduct shall entitle him. It is so ordered.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DOYLE and CASTLES concur.

MR. JUSTICE JOHN C. HARRISON took no part in the oral argument or determination of this appeal, deeming himself disqualified.