The STATE of Utah, Plaintiff and Respondent,

v.

Brent A. CARSON, Defendant and Appellant.

No. 15627.

Supreme Court of Utah.

June 18, 1979.

Salt Lake Legal Defender Assn., Lynn R. Brown, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., William W. Barrett, Asst. Atty. Gen., R. Paul VanDam, Salt Lake County Atty., Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

The defendant was charged with three first degree felonies: aggravated sexual assault, aggravated robbery, and aggravated burglary. Negotiations between counsel resulted in the defendant's pleading guilty to a charge of rape, an offense included within the charge of aggravated sexual assault. The other charges were dismissed.

On October 11, 1977, the court committed the defendant to the Division of Corrections for a diagnostic evaluation pursuant to Section 76–3–404, Utah Code Annotated (1953), as amended, which reads:

76–3–404. Pre-sentence investigation—Commitment of defendant—Sentencing procedure.—(1) In felony cases where the court is of the opinion that imprisonment may be appropriate but desires more detailed information as a basis

for determining the sentence to be imposed than has been provided by the presentence report, the court may, in its discretion, commit a convicted defendant to the custody of the division of corrections for a period not exceeding ninety days. The division of corrections shall conduct a complete study of the defendant during that time, inquiring into such matters as the defendant's previous delinquency or criminal experience, his social background, his capabilities, his mental, emotional and physical health, and the rehabilitative resources or programs which may be available to suit his needs. By the expiration of the period of commitment, or by the expiration of the additional time as the court shall grant, not exceeding a further period of ninety days, the defendant shall be returned to the court for sentencing, and the court, prosecutor, and the defendant or his attorney shall be provided with a written report of results of the study, including whatever recommendations the division of corrections believes will be helpful to a proper resolution of the case. After receiving the report and recommendations, the court shall proceed to sentence a defendant in accordance with the sentencing alternatives provided under section 76–3–201.

Also on October 11 the court set January 6, 1978, for sentencing.

On December 13, 1977, the court modified the October 11 order by committing the defendant to the sex offender program at the Utah State Hospital. There is no indication that the judge intended this modification to change the original diagnostic evaluation period.

At the end of the evaluation period on January 6, 1978, defendant appeared for sentencing before a different trial judge. At that time the Division of Corrections submitted a report of its evaluation and requested an additional ninety-day evaluation period in which to determine whether defendant would be a suitable candidate for placement in the sexual offender program for long-term treatment. The judge ex-

pressly indicated that he had reviewed the whole history of the defendant and inquired whether there was any legal reason why sentence should not be imposed. None was expressed, and the judge sentenced the defendant to prison for the term provided by law for a second-degree felony, one to fifteen years.

On appeal defendant claims (1) that the sentencing judge abused his discretion by not ordering a second ninety-day diagnostic evaluation as requested by the Division of Corrections, and (2) that he did not have a sufficient factual basis on which to sentence him. There is no merit to either claim.

■ As to defendant's first claim, the statute is clear that the ninety-day pre-sentence evaluation which a judge may request pursuant to Section 76–3–404 is a tool available to a sentencing judge, if he " . . . desires more detailed information as a basis for determining the sentence to be imposed . . . ." The recommendations contained in the evaluation report are not binding, and the judge may determine the extent to which conclusions in the report should be accorded weight in the pronouncement of the sentence. Likewise, according to the language of Section 76–3–404, the decision to order an additional evaluation, such as requested by the Division of Corrections in this case, lies within the discretion of the trial judge, and there is no showing in this record of an abuse of that discretion.

■ As to the defendant's second claim, it should be noted that the sentencing judge's discretion in sentencing may be based on several sources of information, but that discretion does not extend to imposition of a sentence made in total ignorance of the background of the defendant. In *State v. Sibert,* 6 Utah 2d 198, 205, 310 P.2d 388, 393 (1957), the Court indicated that there are limits to the scope of discretion accorded a trial judge:

These matters, which are to be considered in connection with the prior record of the accused, are of such nature that the problem of probation must of necessity rest within the discretion of the judge who

hears the case. This is not to say that if it were clearly shown that the trial judge would have granted probation except for some wholly irrelevant, improper or inconsequential consideration, such refusal might be so capricious and arbitrary as to warrant the conclusion that he did not in fact exercise his discretion and justify a review of his action.

When a judge undertakes to impose a sentence, he should be familiar with the pre-sentence report and whatever diagnostic evaluations have been conducted. Of course the exercise of discretion in a manner unfavorable to the defendant does not indicate an abuse of discretion, *State v. Plum*, 14 Utah 2d 124, 378 P.2d 671 (1963); but there are circumstances in which a sentencing judge transgresses the limits of his discretion.[1]

While it is preferable that the judge who takes a defendant's plea be the same as the judge who sentences that defendant,[2] it is not essential that they be the same. The difficulties that arise from the scheduling assignments of trial judges in a multi-judge district sometimes make it impossible for the same judge to sit in both capacities. Especially in cases in which the trial judge is different from the sentencing judge, it is incumbent on the judge who imposes sentence to be familiar with the pre-sentence report and any pre-sentence evaluations that are available. The trial judge's familiarity with such reports at least assures that there is an adequate basis for the exercise of his discretion.

In this case defendant claims that the sentencing judge did not have a factually sufficient basis to impose sentence. It has been held that when the sentencing judge is not the same as the trial judge, or the judge who took a plea, and the record does not indicate what the sentencing judge considered, it is presumed that the sentencing judge was familiar with the defendant's record, e.g., *People v. Mancha*, 213 Cal. App.2d 590, 29 Cal.Rptr. 72 (1963); and

---

1. That the discretion accorded the trial judge in the sentencing of a defendant is limited is illustrated by several examples recited in *State v. Plum*, 14 Utah 2d, supra, at 126, 378 P.2d at 672:

   In the remaining cases called to our attention the appellate courts either reversed or modified the actions of the trial courts upon a determination, under the facts presented, that the judge had abused his discretion, as a matter of law: There was the case where the judge told the defendant to go ahead and make a "deal" with the prosecutor and then declined to go along with the arrangements made (*Morgan v. State*, 33 Okl.Cr. 277, 243 P. 993); the case of the 19-year-old illiterate boy who appeared without counsel and pled guilty (*State v. Hovis*, 353 Mo. 602, 183 S.W.2d 147); the Creek Indian case where it was made to appear that the defendant had appeared for sentence without the benefit of counsel or an interpreter (*Harjo v. State*, 70 Okl.Cr. 369, 106 P.2d 527); and the case of the alleged child deserter who appeared without counsel and, due to a misunderstanding, entered a plea of guilty (*State v. McBane*, 128 Mont. 369, 275 P.2d 218).

2. The ABA Standards Relating to Sentencing Alternatives and Procedures § 5.1 and the commentary following it recommend review standards for the sentencing judges who do not try a criminal defendant's case or take his plea:

   (b) If guilt was determined by plea, it is still desirable that the same judge who accepted the plea impose the sentence. It is recognized, however, that the rotation practices of many courts make it impossible in many instances for the same judge to sit in both capacities. In any event, the judge who imposes sentence should ascertain the facts concerning the plea and the offense.

   Commentary on ABA Standards § 5.1(a), (b): In cases where a plea is accepted in lieu of a trial, there is still an advantage in having the same judge both accept the plea and impose the sentence. This is premised on the view that the proper acceptance of a plea involves a personal examination of the accused by the judge to ascertain if the plea is truthful, if the defendant understands the consequences of pleading guilty, and if the plea is voluntarily given.

   Practical considerations, however, lead the Advisory Committee not to suggest a requirement that the same judge impose the sentence in such a case. The present practices of many courts could not easily be adapted to such a procedure, and the judgment is that they need not be sacrificed to this objective. Subsection (b) provides, in essence, that if a different judge is to impose sentence, he should briefly repeat the inquiry which led to the acceptance of the plea. This should then place him in as good a position to impose the sentence as the judge who originally heard the case.

*People v. Connolly,* 103 Cal.App.2d 245, 229 P.2d 112 (1951). Since, however, there is a possibility of error infecting a sentence because of lack of knowledge of the defendant's record, and even error in basing a sentence on documents other than those pertaining to the defendant to be sentenced, such a rule is not conducive to the fair administration of the criminal laws. It in effect prevents mistakes as to basic facts concerning the defendant from being disclosed to defense counsel because of the practical difficulty, if not impossibility, of rebutting the presumption.

Given the volume of cases handled by the courts, sentencing may be based on errors which, if made known to the trial judge, could produce a different result. To avoid errors, sentencing procedures require a somewhat stricter standard than the general presumption of regularity. At the least, there should be on the record an identification of the reports that were before the sentencing judge at the time of pronouncing sentence[3] and an indication that those reports were made with respect to the particular person to be sentenced.

In this case the record indicates the sentencing judge had before him the defendant's diagnostic evaluation report. He also had a letter which shows that a copy of the report was forwarded to defense counsel. The trial court stated that he had reviewed the defendant's criminal history and specifically noted ". . . it's not just a single offense. It's just a whole history of violence, sex." The court was sufficiently apprised of the pertinent background facts concerning the defendant to impose the sentence.[4]

Since there was no error in the sentencing procedure, the judgment is affirmed.

CROCKETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.

3. A copy of the Division of Corrections' ninety-day diagnostic report must be provided defense counsel and the trial court, Section 76–3–404, U.C.A. (1953), as amended.

4. No issue is raised in this case as to the right of a defendant to have a hearing as to punishment when the nature of the punishment to be imposed depends on judicial discretion, as is permitted by Sections 77–35–12 and 13, U.C.A. (1953), as amended. See generally *Reddish v. Smith,* Utah, 576 P.2d 859 (1978).