STATE of Utah, Plaintiff and Respondent,

v.

Leonard LIPSKY, Defendant and Appellant.

No. 16389.

Supreme Court of Utah.

Feb. 26, 1980.

whether the defendant at the time of his sentencing was unlawfully denied access to the pre-sentence report.

The defendant entered a plea of guilty to aggravated assault. The trial court, at the defendant's request, ordered a pre-sentence investigation and report from the Adult Probation and Parole Department. The defendant filed a motion for disclosure of the report submitted. When the defendant appeared for sentencing, the trial judge, referring to the defendant's motion, indicated that he had instructed Adult Probation and Parole to turn over to the defendant "any derogatory information that was in the file." Defense counsel stated that he had not received any information. The court then verbally summarized the contents of the report.

Defense counsel requested that the court commit the defendant to a treatment facility instead of the State Prison. The court delayed sentencing and ordered a ninety-day diagnostic evaluation and report pursuant to § 76–3–404. Upon completion of that report, the defendant reappeared for sentencing, at which time the court denied defense counsel's request that the defendant be placed in the State Hospital. The court then sentenced the defendant to a term in the Utah State Prison not to exceed five years and ordered him to pay $100 in restitution to the victim of the assault. The defendant does not challenge the accuracy of the pre-sentence report.

Sheldon R. Carter, Provo, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Craig L. Barlow, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

Defendant Lipsky appeals from a judgment entered against him for committing aggravated assault in violation of § 76–5–103(1)(b).[1] The only issue on appeal is

■ There is no specific statutory provision in Utah law dealing with pre-sentence reports. Section 76–3–404, which authorizes a trial court to order a ninety-day psychiatric evaluation and report for the purpose of assisting in sentencing in felony cases, refers in passing to the kind of pre-sentence report which is the subject matter of this appeal.[2] However, a psychiatric re-

1. All statutory references, unless otherwise indicated, are to Utah Code Annotated (1953), as amended.

2. Section 76–3–404 reads as follows:

(1) In felony cases where the court is of the opinion that imprisonment may be appropriate but desires *more detailed information as a basis for determining the sentence to be imposed than has been provided by the pre-*

port prepared pursuant to § 76–3–404 is different from a pre-sentence report. Clearly, a defendant is entitled to receive a copy of the psychiatric report. Section 76–3–404 mandates that a copy of the diagnostic valuation be given to "the court, prosecutor and the defendant or his attorney."

This Court has several times addressed the issue of a defendant's right to receive a copy of his pre-sentence report. In each case this Court has held disclosure to be subject to the discretion of the trial court. The leading case is State v. Cunico, 23 Utah 2d 325, 462 P.2d 720 (1969).[3] The defendant in Cunico contended that §§ 77–35–12 and 77–35–13 require that when a trial court has discretion as to the extent of punishment, the court may consider any circumstances either in aggravation or mitigation of the punishment and that the evidence in aggravation or mitigation of the punishment may be presented to the court only by the testimony of witnesses in open court. Sections 77–35–12 and 77–35–13 read as follows:

> 77–35–12. When discretion is conferred upon the court as to the extent of punishment, the court, at the time of pronouncing judgment, may take into consideration any circumstances, either in aggravation or mitigation of the punishment, which may then be presented to it by either party.

77–35–13. The circumstances must be presented by the testimony of witnesses examined in open court, except that when a witness is so ill or infirm as to be unable to attend, his deposition may be taken by a magistrate of the county, out of court, upon such notice to the adverse party as the court may direct. No affidavit or testimony, or representation of any kind, verbal or written, shall be offered to or received by the court or a judge thereof in aggravation or mitigation of the punishment, except as provided in this section.

Cunico declined to adopt the defendant's argument, holding that where the law specifies the sentence which must be pronounced, i. e., an indeterminate sentence, the trial court does not have discretion as to the extent of punishment. Under this rationale, it is the Board of Pardons that has the discretion to determine the extent of punishment. The conclusion was reached that the trial court is free to take into consideration materials other than those presented by the testimony of witnesses in open court for the purpose of sentencing.

State v. Doremus, 29 Utah 2d 373, 510 P.2d 529 (1973), followed Cunico and held that disclosure of a pre-sentence report is within the discretion of the trial court. Accord, State v. Dowell, 30 Utah 2d 323, 517 P.2d 1016 (1974); Reddish v. Smith, Utah,

sentence report, the court may, in its discretion, commit a convicted defendant to the custody of the division of corrections for a period not exceeding ninety days. The division of corrections shall conduct a complete study of the defendant during that time, inquiring into such matters as the defendant's previous delinquency or criminal experience, his social background, his capabilities, his mental, emotional and physical health, and the rehabilitative resources or programs which may be available to suit his needs. By the expiration of the period of commitment, or by the expiration of the additional time as the court shall grant, not exceeding a further period of ninety days, the defendant shall be returned to the court for sentencing, and the court, prosecutor, and the defendant or his attorney shall be provided with a written report of results of the study, including whatever recommendations the division of corrections believes will be helpful to a proper

resolution of the case. After receiving the report and recommendations, the court shall proceed to sentence a defendant in accordance with the sentencing alternatives provided under section 76–3–201.

(2) Any commitment for pre-sentence investigation under this section shall not constitute a commitment to prison. However, any person who shall be committed to prison following proceedings under this section shall be given credit against his sentence for the time spent in confinement for a pre-sentence investigation report. [Emphasis added.]

3. In actuality it is not clear that Cunico dealt with pre-sentence reports. However, cases subsequent to Cunico which did definitely involve pre-sentence reports adopted Cunico's reasoning and therefore, for purposes of this opinion, we treat Cunico as a pre-sentence report case.

576 P.2d 859 (1978). See also *State v. Harris*, Utah, 585 P.2d 450 (1978).[4]

However, in *Reddish v. Smith, supra,* the Court divided over the issue of whether the trial court has discretion in imposing punishment and on the applicability of §§ 77–35–12 and 77–35–13 to pre-sentence reports. Justices Maughan and Wilkins expressed the view that the trial court has substantial discretion in sentencing and that those two provisions therefore apply and require disclosure of the pre-sentence report. See also *State v. Harris, supra,* and the separate opinion by Justice Wilkins, concurred in by Justice Maughan.

Although it is true that a trial court has no discretion in sentencing a defendant to a certain number of years in prison under Utah's indeterminate sentencing laws, it is hardly contestable that, from a broader viewpoint, the court in fact has very wide discretion in sentencing. A court may sentence a defendant to a prison term, impose a fine, enter judgment for a lower category of offense pursuant to § 76–3–402, place him on probation, disqualify him from public or private office pursuant to § 76–3–201, sentence the defendant to serve prison terms concurrently or consecutively, order the defendant to pay restitution, or suspend a prison sentence. As pointed out in the dissent of Justice Wilkins in *Reddish v. Smith, supra,* this wide variety of alternatives not only permits, but absolutely requires, the exercise of discretion.

However, it does not follow that § 77–35–13 encompasses the pre-sentence report. On the contrary, we hold, for the reasons discussed below, that the trial court may receive information concerning the defendant in the form of a pre-sentence report without the author of the report necessarily

personally appearing and testifying in open court, as would be required by § 77–35–13, but that the report should be disclosed to the defendant. If the defendant thinks the report inaccurate, he should then have the opportunity to bring such inaccuracies to the court's attention.

Section 77–35–13 was enacted in 1888 and has remained unchanged since the days of its inception. See 2 Comp.Utah Laws 1888, § 5112. Subsequently, in 1923 the Legislature enacted § 77–35–17 which provides, *inter alia,* for probation,[5] and in 1953 § 76–3–404 was enacted which provides for the psychiatric diagnostic evaluation and report. According to § 77–35–17, the sentencing judge may receive information concerning the status of a probationer through a "report of the probation agent in charge of the defendant, or otherwise . . .," and § 76–3–404 authorizes the trial judge to receive a written report of the ninety-day diagnostic evaluation. Neither § 77–35–17 nor § 76–3–404 indicates that the Legislature intended that the probation report or the ninety-day diagnostic evaluation be presented to the sentencing court "by the testimony of witnesses examined in open court" pursuant to § 77–35–13.

Utah is not alone in having a statutory scheme with no express legislative guidance as to whether pre-sentence or probation reports should be disclosed to the defendant. The Supreme Court of Oregon faced a situation nearly identical to the instant case in *State v. Scott,* 237 Or. 390, 390 P.2d 328 (1964). As in the case at hand, a trial court having discretion as to the extent of punishment was precluded by Oregon state law from receiving evidence in mitigation or aggravation other than according to statu-

---

4. A majority of the Court did not concur in the holding of *State v. Harris.*

5. Section 77–35–17 was effective May 8, 1923. See 1923 Utah Laws, Chapter 74, § 1. Section 77–35–17 was amended on March 17, 1943. See 1943 Utah Laws, Chapter 24, § 1. The 1943 Legislature added the following sentence which appears in § 77–35–17 today:

> Where it appears to the court from the report of the probation agent in charge of the de-

fendant, or otherwise, that the defendant has complied with the conditions of such probation, the court may if it be compatible with the public interest either upon motion of the prosecuting attorney or of its own motion terminate the sentence or set aside the plea of guilty or conviction of the defendant, and dismiss the action and discharge the defendant.

tory provisions substantially similar to §§ 77–35–12 and 77–35–13.[6] However, the Oregon Legislature had enacted a later statute providing for a report to the trial court by probation officers. In *Scott*, the court held that the later statute, pertaining to the probation officers' reports, amended by implication the earlier statute which stated that all aggravating and mitigating evidence had to be received by the Court according to its terms. Therefore, the court held that Oregon's statutes limiting the evidence considered by a court for sentencing purposes to testimony of witnesses in open court did not control pre-sentence reports. The court stated:

> It is obvious that the later statute, ORS 137.530, amended by implication ORS 137.110. Amendment of statutes by implication is recognized when the matter is clear. *State ex rel. Medford Pear Co. v. Fowler*, 207 Or. 182, 195, 295 P.2d 167 (1956). The information the probation officer is directed to obtain by ORS 137.-530 is information which can be in aggravation or mitigation. The statutes now authorize the presentation of such information in two ways: by testimony in open court or by the presentence report. The latter is at the sentencing court's discretion. [390 P.2d at 331–32.]

California also has a statute like Utah's which was construed in *People v. Giles*, 70 Cal.App.2d Supp. 872, 161 P.2d 623 (1945). Section 1204 of the California Penal Code, referring to circumstances which may either aggravate or mitigate the punishment, states:

> The circumstances must be presented by the testimony of witnesses examined in open Court . . . .. No affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the Court, or a judge thereof, in aggravation or mitigation of the punishment, except as provided in this and the preceding section.

In *Giles*, the trial court had received letters, telephone calls, and personal comments from various individuals which were all derogatory of the defendant and which the appellate court found had affected the sentencing judge's determination. The reviewing court held that the trial judge should not have accepted such ex parte communications and given weight to them; rather, any material not supplied by the probation officer's report or by the record of the trial should have been obtained "from the lips of witnesses called in open court," 161 P.2d at 629.

Although *Giles* proscribed ex parte, unofficial communications to a sentencing judge, the Court, by approving the probation officer's report to the court as a method of informing the judge about the criminal defendant to be sentenced, impliedly held that the report did not have to comply with California's statute that the information "must be presented by the testimony of witnesses examined in open court."

Montana and Idaho have construed comparable statutory provisions to apply to pre-sentence reports. *Kuhl v. District Court*, 139 Mont. 536, 366 P.2d 347 (1961); *State v. Rolfe*, 92 Idaho 467, 444 P.2d 428 (1968). Following the *Kuhl* decision, the Montana Legislature repealed the relevant statute and replaced it with one which expressly makes disclosure of the pre-sentence report discretionary.

Consistent with the Oregon and California decisions, we hold that the pre-sentence reports are not subject to § 77–35–13.

■ We next address the issue whether pre-sentence reports should, nevertheless, be disclosed to the defendant prior to sentencing for the reason that the exercise of sentencing discretion should be based on accurate information. Over the years there has been considerable dispute over this issue. Courts have reached varying results for varying reasons. See generally 40 A.L. R.3d 681; 8A *Moore's Federal Practice*, § 32.01[3] *et seq.* (1966 Committee Notes to

---

6. *Buchea v. Sullivan*, 262 Or. 222, 497 P.2d 1169 (1972), discussed *infra*, also interprets Oregon sentencing procedures.

Federal Rules of Criminal Procedure, Rule 32).

The Supreme Court of the United States has never held that the United States Constitution mandates disclosure of pre-sentence reports in every case. However, the Court has recently held that due process and effective assistance of counsel require that a criminal defendant in a capital murder case have full access to his pre-sentence report. *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977).[7] But compare *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

Over the course of the last three decades, the United States Supreme Court has rendered decisions relating to the extent to which pre-sentence and probation reports should be disclosed, and the decisions are not easily reconciled. On the one hand, the Court has maintained that the decision whether to grant a convicted person leniency by imposing a lighter sentence, probation, or a suspended sentence, is largely within the discretion of the sentencing court. *Williams v. New York, supra*;[8] *Es-*

coe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935). See generally *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978).

On the other hand, the Court has rendered several decisions which lend support to the conclusion that fundamental fairness requires disclosure of pre-sentence reports and other information on which a judge may base a sentence. In *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), the Supreme Court held that a defendant who was not represented by counsel was denied due process because the sentencing judge, in imposing sentence, mistakenly believed that the defendant had been found guilty of several crimes. Although the defendant did not specifically raise the issue of whether he was entitled to see the report the judge used to determine the punishment, *Townsend* has, nevertheless, been construed as necessarily implying the right of a defendant to at least know the substance of the pre-sentence report in order to prevent a court from proceeding on inaccuracies.[9]

---

7. It should be noted that a majority of the Court did not concur in any one of the six opinions in *Gardner*, although a majority did concur in the result that the defendant's sentence be vacated and that he be re-sentenced after having seen the full pre-sentence report.

8. In *Williams*, a jury convicted the defendant of murder but recommended a life sentence. The sentencing judge relied, in part, on information contained in a pre-sentence report which was not available to the jury. The defendant apparently was not given a copy of the pre-sentence report, although the judge, at the time of sentencing, recited from the bench the information contained in the report. The defendant contended that this procedure violated his constitutional right of confrontation. The Court rejected his contention on the grounds that sentencing judges should not be denied the opportunity to obtain pertinent information and that the interests of justice would not be served by denying courts access to information about "every aspect of a defendant's life." *Id.* 337 U.S. at 250, 69 S.Ct. at 1084.

It is necessary to note that *Williams* was decided prior to *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49

L.Ed.2d 913 (1976); and *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), all of which seriously undermine, if not overrule, *Williams*, which permitted discretion in the sentencing aspects of a capital death case.

9. Recent Utah law is consistent with the view that sentencing procedures ought to enhance the likelihood that the trial court will sentence a defendant on the basis of accurate information. In *State v. Carson*, Utah, 597 P.2d 862, 866 (1979), the Court stated:

Given the volume of cases handled by the courts, sentencing may be based on errors which, if made known to the trial judge, could produce a different result. To avoid errors, sentencing procedures require a somewhat stricter standard than the general presumption of regularity. At the least, there should be on the record an identification of the reports that were before the sentencing judge at the time of pronouncing sentence and an indication that those reports were made with respect to the particular person to be sentenced. [Footnote omitted.]

The problem addressed in *Carson* differs from that in the instant case in that *Carson* did not involve the pre-sentence report; rather, the defendant claimed that the sentencing court should have ordered a second ninety-day diag-

In 1966 the Supreme Court decided *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, which dealt with the issue of whether the procedures used to transfer jurisdiction of a juvenile to a criminal court were lawful. A state statute provided for disclosure of a social service file on a juvenile offender to certain persons. The file had been prepared by the staff of the juvenile court. The statute provided for disclosure to persons having a legitimate interest in the protection of the child. *Kent* held that the statute, "[buttressed by] constitutional principles relating to due process and the assistance of counsel," required that the records relied upon by the juvenile court to waive jurisdiction and order the juvenile to stand trial as an adult had to be made available to the child's counsel.

In *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), the Supreme Court held that a criminal defendant, convicted under a state sex offenders act, was denied due process because of the procedures to which he was subjected pursuant to that act. The state act authorized a trial court to order an examination of a convicted sex offender by psychiatrists, to receive the report and use it as a basis for determining whether the defendant constituted a threat of bodily harm to the public or was an habitual offender and mentally ill, and to impose an indeterminate sentence upon the defendant, without granting him the procedural safeguards of a hearing and the right of confrontation. *Specht* reiterated the doctrine in *Williams v. New York, supra*, that the due process clause does not require that a convicted defendant be given the opportunity to have a hearing on his sentence and participate in that hearing in the determination of the sentence to be imposed, but it did hold that where the sentencing court must in effect make new findings of fact (i. e., whether the defendant is a threat to the public or is an habitual offender and mentally ill), due process requires that the defendant be present with counsel, that he have an opportunity to be heard and confronted by the witnesses against him, and that he be afforded an opportunity to present evidence in his own behalf.

Although *Kent* and *Specht* do not compel the conclusion that pre-sentence reports must be disclosed, they do at least support the broader proposition that basic decisions affecting the disposition of a defendant and his liberty ought not to be based on ex parte communications to the judge making the decision.

In *Buchea v. Sullivan*, 262 Or. 222, 497 P.2d 1169 (1972), the Oregon Supreme Court approached the issue directly and held that sentencing courts should be required to disclose pre-sentence reports. The decision was based on Oregon law and a defendant's constitutional rights of effective assistance of counsel and due process.[10] The court held that "constitutional fairness" requires disclosure of information in the pre-sentence report that is "readily identifiable, public in nature, and [where] none of the reasons for non-disclosure can apply to it," 497 P.2d at 1176. Although *Buchea* did not go so far as to hold that a defendant is constitutionally entitled to full disclosure of his pre-sentence report in every case, the court nevertheless held that it would be a deprivation of due process and assistance of counsel to withhold information where there is no countervailing public interest in nondisclosure. In 1969, the New Jersey Supreme Court rendered a similar decision in *State v. Kunz*, 55 N.J. 128, 259 A.2d 895 (1969), holding that "fundamental fairness" requires that a defendant be given the opportunity to examine fully and

---

nostic report and that the court's failure to do so made it impossible to have a sufficient basis upon which to impose sentence. On review this Court ruled against that position but did indicate that sentencing should be based on procedures designed to insure accurate information.

10. As discussed *supra*, in *State v. Scott*, 237 Or. 390, 390 P.2d 328 (1964), the Oregon Supreme Court had already construed statutes similar to §§ 77–35–12 and 77–35–13 and held that sentencing courts could receive information about the defendant, for purposes of determining punishment, in two ways: by testimony in open court or by the pre-sentence report.

controvert any prejudicial information that played a part in the sentencing procedure.

In our view, fundamental fairness requires that procedures both in the guilt phase and in the sentencing phase of a criminal proceeding be designed to insure that the decision-making process is based on accurate information.[11] A defendant's right to be sentenced on the basis of information that is accurate can be protected only if the pre-sentence report is disclosed to him prior to sentencing. In *Kunz* the court stated:

> It is indeed difficult to see how there can be meaningful representation by counsel at sentencing time when there is no disclosure to him of the presentence materials on which the sentence is being based. And surely without such materials he is in no fair position to determine whether an appeal should be taken from the sentence or how to prosecute it if it is taken. . . . See Rubin, *"Sentences Must Be Rationally Explained"* 42 F.R.D. 203, 217 (1968):
>
> > Certainly if the defendant has the right to have an appellate court pass on the validity of his sentence and, in so doing, consider the presentence investigation on which the sentence was based, how can this process operate intelligently unless the defendant knows enough about the report to challenge it where necessary and unless the court has the report in front of it? Certainly if the defendant can raise issues about the report, he has a right to examine it to see whether it is legally adequate in his case. [55 N.J. at 138, 259 A.2d at 900.]

The Oklahoma Court of Criminal Appeals approved the holding of *Kunz, supra,* in *Jones v. State*, Okl.Cr.App., 477 P.2d 85 (1970). Although the court discussed an Oklahoma statute which authorized the giving of a copy of the pre-sentence report to the defendant, the court nevertheless based its decision to compel disclosure on the ground that "rudimentary fairness" requires that a defendant be allowed to examine his pre-sentence report and be given an opportunity to be heard on those items in the report which the trial court would consider in sentencing.

The opponents of a policy of mandatory disclosure argue that if a defendant were entitled to have full access to his pre-sentence report, (1) the sources of confidential information would dry up; (2) those people supplying such information might be endangered; (3) the defendant's relationships with family and friends, which may be important to his rehabilitation, might be impaired because of the information given by them about the defendant; (4) in those states which include psychological evaluations in the presentence reports, the defendant's potential for rehabilitation might be impaired if he were to learn abruptly the diagnoses of his psychological and emotional conditions; and (5) the sentencing process might become unduly protracted. Concededly, some of these arguments have merit.

The contentions that sources of confidential information may dry up, that these sources might be endangered, and that the defendant's personal relationships with family and close friends which are important in furthering rehabilitation might be impaired, are deserving of little weight because in some circumstances they are not, in our view, factually well founded; and, in any event, protecting the integrity of the criminal justice system by requiring that accurate information be the basis for important decisions outweighs such claims. The sentencing philosophy of the criminal law is that the punishment should not only fit the crime but the defendant as well. It is

---

11. A few examples of these rights are (1) the right to counsel throughout all critical stages of the proceedings, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), including the sentencing phase, *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); (2) the right to disclosure of excul-patory evidence from the prosecution, e. g., *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (3) the right to be confronted by the witnesses against him, *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

essential that fairness in sentencing both be perceived as such by the public and the defendant and, in fact, be fair. The information about the defendant must be accurate if society and the individual are to be properly served.

We are not unmindful that in some cases the considerations argued in opposition to disclosure may be significant. In those rare cases, we choose to follow *State v. Kunz, supra,* which recommended that the presentence report first be examined by the trial judge so that he may eliminate the matters which will play no part in the sentencing process. The report thereafter furnished to the defendant must contain *in toto* the information which will bear in any way on the sentencing, and the trial court should so recognize in its deliberation and determination.

The argument that the defendant's potential for rehabilitation might be impaired if he were to learn abruptly of his psychological and emotional problems has, in effect, already been dealt with by the Legislature. In the interest of fairness and accuracy, § 76–3–404 mandates the disclosure of the ninety-day diagnostic evaluation of the defendant, which regularly includes a psychological evaluation, even though there may be an adverse impact on the potential for rehabilitation because of such disclosure. With respect to reports dealing with the mental state of the defendant, there is no basis for distinguishing pre-sentence reports and psychological reports.

Finally, the contention that full disclosure might result in protracting the sentencing process has little merit. Under Utah law a defendant is already entitled to present evidence in mitigation of his punishment. *State v. Doremus,* 29 Utah 2d 373, 510 P.2d 529 (1973). Clearly, most of the information contained in pre-sentence reports is accurate, and it will be the unusual case in which the defendant will need to contest the accuracy of the pre-sentence information.

1. *State v. Harris,* Utah, 585 P.2d 450 (1978); *Reddish v. Smith,* Utah, 576 P.2d 859 (1978); *State v. Doremus,* 29 Utah 2d 373, 510 P.2d 529

In sum, there is no doubt that the conviction of a criminal offense itself, without consideration of the punishment, represents a societal condemnation against an individual that may be a painful, humiliating, and degrading experience. The great majority of our laws and rules of evidence pertaining to criminal trials seek to guarantee those accused of criminal conduct their constitutional right to a fair trial insofar as the determination of guilt is concerned. Fewer safeguards exist which insure fairness in the punishment phase, even though it is the punishment which in fact often has a far more profound impact on a person than the finding of guilt. The fair administration of justice at the least requires that the information upon which the judge relies in imposing punishment is accurate.

The decision to compel disclosure of presentence reports is not intended to impinge upon the sentencing judge's discretion in determining what punishment fits both the crime and the offender; rather, it acts only to shore up the soundness and reliability of the factual basis upon which the judge must rely in the exercise of that sentencing discretion.

Accordingly, the defendant's sentence is set aside, and the cause is remanded to the sentencing court for resentencing in accordance with this opinion.

WILKINS, J., concurs.

MAUGHAN, J., concurs in the result.

CROCKETT, Chief Justice (dissenting):

I disagree with the decision. The depriving of the trial court of discretion, and making it mandatory to furnish the full contents of a presentence report to the defendant, works an unjustified, unnecessary and impractical change in our law. I think we should remain committed to the long-established rule which has worked quite well, of permitting the trial court to exercise his judgment as to whether, and to what extent, such a report is furnished to a person after he has been convicted of a crime.[1]

(1973); *State v. Cunico,* 23 Utah 2d 325, 462 P.2d 720 (1969).

With the precautions noted in the case of *State v. Harris*,[2] I think the just-stated rule is fair, practical, in conformity with our law, and adequately protects both the defendant and the public.

The difficulty with the proposition espoused in the court's opinion is that it appears to be based on the assumption that the convicted defendant has some vested right to probation, and that the trial judge has some obligation to show some justification for not granting it. Whereas, the fact is that after a person is convicted, his presumption of innocence, and other safeguards against convicting the innocent are gone.[3] Then, the extent of the defendant's entitlement is to have the sentence provided by law imposed upon him. However, the court, in accordance with Section 77–35–17, U.C.A.1953, is empowered to place the defendant on probation. This he will do if he thinks that will best serve the ends of justice and is compatible with the public interest. The statute places no restriction upon him as to how he will carry out that purpose. Therefore, he should be able to proceed in any reasonable and fair manner that will be helpful to him in discharging that responsibility.

The arguments listed in the main opinion against full mandatory disclosure impress me as being valid and persuasive. In addition to drying up the sources of information, the risk of provoking animosities, and possible dangers to persons willing to provide information, additional procedural burdens are created. It should be realized that all of these combined may well diminish rather than increase the possibilities of probation by dissuading judges from requesting presentence investigations and thus inviting the difficulties this new rule places upon them.

Notwithstanding what else may be said about this controversial proposition, I reiterate the caution expressed in *State v. Harris*[4] that even after one has been convicted of a crime, he should still be treated with fairness; and that consistent with that objective, the trial court should exercise care to see that no false or misleading information is permitted to influence his judgment. This may well include the precaution that the court should indicate to the defendant and his counsel the general nature of any information adverse to him in the presentence report; and if the court thinks that any of the information and/or its source ought to be kept confidential, he should state, in a general way, why he thinks so.

It seems to be consistent with the pattern of justice under law, as administered through our courts, that sufficient confidence should be reposed in our trial judges to assume that they will discharge their duties in a responsible manner. But this change in our rule, which deprives the trial court of discretion in such matters, can only be justified under a contrary assumption, arising from distrust of those judges. We should indulge the presumption that they are men of integrity, and of fairness and sincerity of purpose; and conversely, we should not treat them as though they were without those qualities and so likely to engage in unfairness that they ought to be held under rigid rules and strict scrutiny by the convicted defendant and his counsel.

The change in the rule demeans the courts, puts further burdens upon them, and upon those who would enforce the law; meanwhile, it puts additional tools for encumbering and obstructing the processes of justice in the hands of those who violate the law. It should also be kept clearly in mind that to whatever extent the courts impede justice, or help the guilty to evade justice, they are responsible for increasing dangers to the law-abiding citizenry. It is my firm conviction that the Court's decision is an ill-advised and unjustified move in that direction, which adds fuel to the fire of the already too prevalent notion of the public:

2. Supra, note 1.

3. *Velasquez v. Pratt*, 21 Utah 2d 229, 443 P.2d 1020 (1968) and authorities therein cited.

4. Supra, note 1.

that the courts lean more to the protection of criminals than to the protection of the rights of their victims and law-abiding society.

For the foregoing reasons, I dissent; and also concur in the dissenting opinion of Justice Hall. I would adhere to the long-established and, in my judgment, better considered and more practical rule of allowing the trial judge discretion in such matters. Moreover, if there is to be any such abrupt change in the law, it should be by the legislature.

HALL, Justice (dissenting):

I respectfully dissent.

While the actual legal basis for the majority's conclusion that a defendant is entitled to full disclosure of the presentence report relied on by the sentencing court is not completely clear, the ruling seems to rest, at least impliedly, on constitutional underpinnings, and more particularly on the Due Process clause of the Fourteenth Amendment. This conclusion appears to have been derived from the holdings in several recent United States Supreme Court opinions referred to in the majority opinion. I am of the opinion that none of these cases stands for the proposition urged by the majority.

It is my belief that the controlling case addressing the matter of due process ramifications of presentence report disclosure is that of *Williams v. New York*.[1] Therein, the trial court, following defendant's conviction on a charge of murder, disregarded the jury's recommendation of life imprisonment and ordered the death penalty, based on information extraneous to the trial and inadmissible for jury consideration. This information was summarized by the trial court from the bench prior to sentencing. While not challenging the accuracy of the information, the defendant objected to its use on due process grounds. In upholding

the court's discretionary use of the additional information relied on, the Supreme Court observed:

Tribunals passing on the guilt of a defendant have always been hedged in by strict evidentiary procedural limitations. But both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law. . . . In a trial before verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused. Rules of evidence have been fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the offense charged. . . . A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined.[2]

It is to be noted that the challenge in *Williams* dealt with the court's use of extraneous information, not with any failure to disclose it. Later decisions,[3] however, have extended the rationale of *Williams* to cover not only those cases wherein outside information was used, but also those in which that information was denied the defendant, beyond a brief statement of its general import prior to sentencing. Such an extension is clearly warranted. Where a defendant's guilt has been determined, and punishment has been fixed by law, subject only to the trial court's election among discretionary sentencing alternatives (or, as in the present case, between incarceration and release on probation), those adversary proceedings guaranteed by the Constitution,

1. 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

2. Id., at 246–247, 69 S.Ct. at 1082–1083.

3. See, e. g., *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), and *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), discussed *infra*.

and generally garnered under the heading of Due Process, are at an end. Defendant has had full benefit of due process, and has been found guilty. The discretionary imposition of sentence creates no further rights, either to bind the court with evidentiary restrictions or to demand full access to sentencing information prior to sentence pronouncement. As observed by Chief Justice Crockett in his dissenting opinion, defendant has no right to probation, and while some procedure is needed to prevent improper reliance on wholly spurious and false information,[4] complete disclosure of a presentence report is not required.

Neither am I persuaded that the decisions relied on by the majority to establish the contrary position are properly applicable in this case, nor that they "seriously undermine, if not overrule" *Williams*. The opinion in *Townsend v. Burke*,[5] rendered prior to the *Williams* decision, rested on the grounds that the defendant was sentenced on the basis of patently false information, relied on by the court (in a very flippant manner) in sentencing, while defendant was without counsel. *Townsend* was decided while the rule announced in *Bute v. Illinois*[6] was still in effect, to wit, denial of counsel in noncapital cases constituted denial of due process only where overreaching or prejudice resulted. The court's observation that, had defendant had counsel present, the information summarized from the bench might have been challenged, was a means of showing that denial of counsel had prejudiced defendant, not an edict that all sentencing information must be placed at defendant's disposal.

No more dispositive of the *Williams* rule is the case of *Kent v. United States*,[7] a 5–4

decision holding that a District of Columbia statute[8] permitting a juvenile court to waive exclusive jurisdiction and remit an accused to the district court required a hearing and defense access to social records relied on by the court in reaching its decision. It is noteworthy first that the case dealt only collaterally with due process considerations; it focused primarily on the statute itself. More important, however, is the fact that the waiver procedure was a pre-conviction matter, and determined whether or not the accused would receive the benefits of juvenile process or be subjected to full adversary proceedings. Such a holding cannot be regarded as controlling in a case such as the one before this Court, where conviction has been arrived at in full compliance with defendant's constitutional rights, and only the imposition or waiver of legally-prescribed punishment remains to be determined by the court.

The Supreme Court took pains to point out that *Williams* had no bearing in the case of *Specht v. Patterson*,[9] which presented a "radically different situation."[10] That case involved the application of the Colorado Sex Offenders Act[11] to an individual convicted of a sex offense. The Court observed that the Act, which prescribed a procedure in the nature of a civil conviction, involved further fact-finding and evidence—it "makes one conviction the basis for commencing another proceeding under the Act to determine whether a person constitutes a threat of bodily harm to the public, or is an habitual offender or is mentally ill."[12] The statute having imposed such further proceedings, they ought to be dispatched with full due process rights, including disclosure of information to the accused.

4. See discussion of *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), and Rule 32, Federal Rules of Criminal Procedure, *infra*.

5. Cited *supra*.

6. 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986 (1948).

7. 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

8. D.C.Code § 11–914 (1961).

9. Cited *supra*.

10. Id., 386 U.S. at 607, 87 S.Ct. at 1211.

11. Colo.Rev.Stat.Anno. §§ 39–19–1 to 10 (1963).

12. *Specht v. Patterson, cited supra*, 386 U.S. at 606, 87 S.Ct. at 1211.

Neither *Williams* nor the instant case involves such circumstances.

*Gardner v. Florida*[13] limits the *Williams* holding to noncapital cases on the strength of intervening holdings of the Supreme Court bearing on the imposition of the death penalty, holding that such capital cases call for disclosure hearing, etc. In distinguishing *Williams*, the main opinion[14] carefully noted that not only was it decided prior to later rulings regarding the death penalty, but that it involved a case wherein (as in the case before this Court) the information relied on by the court was stated to defendant from the bench. No such disclosure was made in the *Gardner* case.

The above decisions seem clearly to establish that the procedure used by the court below in the present case did not violate defendant's constitutional rights. A substantial majority of state courts seem to concur, as they do not mandate the full disclosure of presentence reports on constitutional grounds.[15]

It is enlightening to note, moreover, that the federal court system has adopted a codified procedure for disclosure of presentence reports.[16] Under that procedure, the court, while it is generally expected to reveal the contents of the report, may withhold, at its discretion, any part thereof which the court, for reasons of safety, confidentiality, etc., believes should not be revealed, and may, if it believes it necessary, withhold the entire report, merely summarizing the information contained therein on which the court will rely. Comment and hearing on the information so elicited is likewise discretionary. The action of the court below, viewed in light of such guidelines, would have been unimpeachable.

I join in Chief Justice Crockett's concerns regarding the practical impact of the majority ruling on the future use of the presentence report. Any time that a discretionary procedure, designed to benefit an accused, is beset with procedural obstacles, the likelihood of its being foregone in the interest of simple judicial economy is greatly increased. In the vast majority of cases, this will result only in detriment to the individual whose rights the majority opinion seeks to protect.

For the foregoing reasons, I would affirm the trial court's actions.

---

**13.** Cited *supra*.

**14.** No opinion was concurred in by a clear majority of the court, and six were finally published.

**15.** See generally 40 A.L.R.3d, *Anno: Presentence Report Disclosure*, § 3a, pp. 696–699.

**16.** Rule 32(c)(3), Federal Rules of Criminal Procedure.