**STATE of Utah, Plaintiff and Appellee,**

v.

**Alan S. RHODES, Defendant and Appellant.**

**No. 900498–CA.**

Court of Appeals of Utah.

Oct. 4, 1991.

the defendant could enter his motion. *Smith,* 812 P.2d at 476.

Nancy Bergeson and Elizabeth Holbrook, Salt Lake City, for defendant and appellant.

R. Paul Van Dam and Sandra L. Sjogren, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GREENWOOD and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Defendant appeals from a sentence imposed following judgment and conviction for sexual abuse of a child, asserting that the trial court abused its discretion by sentencing him to prison in lieu of probation. We affirm.

## FACTS

Defendant Alan Rhodes was charged with sodomy on a child, a first degree felony, in violation of Utah Code Ann. § 76–5–403.1 (1990); and sexual abuse of a child, a second degree felony, in violation of Utah Code Ann. § 76–5–404.1 (1990). Rhodes pleaded guilty to the second degree felony in exchange for dismissal of the first degree felony violation. On May 7, 1990, following the procurement of and upon the recommendation of a presentence report, the trial court ordered a ninety-day diagnostic evaluation through the Department of Corrections,[1] while denying

1. A ninety-day diagnostic evaluation may be ordered at the discretion of the trial court pursuant to Utah Code Ann. § 76–3–404 (Supp.1991)

Rhodes's request for further evaluation on an outpatient basis. On August 6, 1990, the trial court sentenced Rhodes to a term of one to fifteen years in the Utah State Prison, following the recommendations of the ninety-day diagnostic team and refusing Rhodes's request for probation.

The staff performing the ninety-day evaluation on Rhodes based its recommendation on three key elements: (1) Rhodes's denial of responsibility; (2) Rhodes's substance abuse; and (3) Rhodes's psychological implications (borderline range of intelligence, inner conflict, chaotic thought patterns). In addition, Rhodes participated in a group diagnostic assessment program to determine his amenability to treatment. The program's staff concluded that Rhodes was a marginal candidate for treatment. He was intellectually and emotionally inadequate; demonstrated little initiative to change; and denied responsibility for his actions by omission, vagueness, rationalization and assumption of a manipulative victim stance.

Rhodes's diagnostic staff sent a referral to the two centers that they felt could offer Rhodes the treatment he required. Both facilities denied Rhodes access: the Fremont facility based on discrepancies in his story, alcohol abuse, and lack of remorse or guilt; and Ogden Community Correctional Center based on his vague recollection of events, lack of commitment to prior programs, and the lack of available space. Overall, the ninety-day diagnostic staff concluded that Rhodes's denial of action and responsibility, his manipulative victim stance, and his physical limitations would all impair his treatment to the extent that "he will need a lot of help if he is ever to function in the world" and, consequently,

that Rhodes should be committed to the state penitentiary as he is still a threat to children. \

Rhodes appeals the sentence imposed by the trial court arguing that denial of guilt and minimization of criminal conduct is not a legally sufficient basis to deny probation.[2] Rhodes also asserts that the trial court should have allowed him time to personally cross-examine the personnel who denied him access to their programs. He contends that the examination is necessary to clarify inaccuracies he perceives to exist concerning the bases for denial.

## STANDARD OF REVIEW

The decision whether to grant probation is within the complete discretion of the trial court. *See State v. Sibert,* 6 Utah 2d 198, 310 P.2d 388, 393 (1957).

> The granting or withholding of probation involves considering intangibles of character, personality and attitude, of which the cold record gives little inkling. These matters which are to be considered in connection with the prior record of the accused, are of such nature that the problem of probation must of necessity rest within the discretion of the judge who hears the case.

*Id.* The only legal restriction is that the trial court not exceed the bounds of discretion. This court reviews the sentencing decisions to discover any abuse of discretion by applying varying standards of review consistent with the issues raised. *See Tolman v. Salt Lake County Attorney,* 818 P.2d 23, 26 (Utah App.1991). For questions of law we employ a "correctness of error" standard. *See State v. Ramirez,* 817 P.2d 774, 781 n. 3 (Utah 1991). For

---

in order to obtain more information that will aid in the sentencing determination.

**2.** On appeal, defense counsel emphasized that the trial court utilized an improper General Disposition Matrix submitted with the presentence report by Adult Probation and Parole to determine the appropriate sentence, thereby denying Rhodes's due process rights. Counsel insists that, had the trial court relied on the matrix published in the Utah Sentence and Release Guidelines, Code of Judicial Admin., Appx. H (1985), Rhodes would have received probation.

Although the issue is not properly before us on appeal as it was not raised at the sentencing hearing, we note for future reference that such argument is without merit, as acknowledged in defendant's brief. The matrix published in the Code of Judicial Administration was prematurely printed prior to its final revision and adoption. The matrix used by the trial court is the matrix approved and employed in the field by Adult Probation and Parole in preparing presentence reports since 1985.

questions of fact, frequently constituting threshold inquiries that must be satisfied prior to addressing the legal intricacies, a "clearly erroneous" standard applies. *See id.* "[A] correctness review necessarily incorporates a review of the trial court's resolution of factual questions and the associated determination of credibility that may underlie the decision to admit [evidence]. This subsidiary determination will be overturned only if clearly erroneous." *Id.*

### ANALYSIS

Initially, Rhodes claims the trial court jeopardized his due process rights by refusing to entertain his motion to continue sentencing to obtain a personal examination and evaluation by the treatment facilities that rejected him, and in-court testimony as to their capacity to successfully treat him. In support of his argument, Rhodes relies on Utah Code Ann. § 77–18–1(4)(b) (1990)[3] which states, "[a]t the time of sentence, the court *shall* hear any testimony or information defendant or the prosecuting attorney desires to present concerning the appropriate sentence." *Id.* (emphasis added). Upon evaluating the statute and interpretive case law, we hold that due process was afforded to Rhodes.

In *State v. Lipsky*, 608 P.2d 1241, 1242 (Utah 1980), the defendant appealed his sentence to a term of imprisonment asserting that his due process rights had been violated because he was not shown the contents of his presentence report prior to the hearing. In remanding the case to the lower court, the supreme court held that "the trial court may receive information concerning the defendant in the form of a pre-sentence report without the author of the report necessarily personally appearing and testifying in open court ... but that the report should be disclosed to the defendant." *Id.* at 1244. *See also State v. Anderson*, 632 P.2d 877, 878 (Utah 1981).

Applied to the instant case, the *Lipsky* holding indicates that the trial court is not required to permit Rhodes to illustrate the contents of the diagnostic evaluation by live testimony, even under section 77–18–1(4)(b). "Neither § 77–35–17 [now § 77–18–1(5)(a) (Supp.1991) ] nor § 76–3–404 indicates that the Legislature intended that the probation report or the ninety-day diagnostic evaluation be presented to the sentencing court by the testimony of witnesses examined in open court[.]" *Lipsky*, 608 P.2d at 1244 (quotation omitted).

The *Lipsky* court emphasized that the decision to compel disclosure of presentence reports was not intended to impinge upon the sentencing judge's discretion to determine what punishment fits both the crime and the offender. *Id.* at 1249. Rather, the court was interested in shoring up the soundness and reliability of the factual basis upon which the judge relies in the exercise of that sentencing discretion. "Fundamental fairness requires that procedures both in the guilt phase and in the sentencing phase of a criminal proceeding be designed to insure that the decision making process is based on accurate information." *Id.* at 1248. The court acknowledged the fact that presentence reports are generally accurate without the need for verbal examination.

However, the oral evidence Rhodes is attempting to submit may concern matters beyond the four corners of the diagnostic report, and thus beyond the scope of the *Lipsky* exception, absent a broad reading. Nonetheless, the trial court did not violate Rhodes's due process rights by rejecting his motion for a continuance. According to *Lipsky*, a defendant has the right to contest the accuracy of the factual bases upon which the sentence is predicated and should have the opportunity to bring such inaccuracies to the court's attention. *Id.* at 1248–49. Section 77–18–1(4)(b) secures a defendant the means to effectively capitalize on this right by obligating the trial court to accept any evidence defendant wishes to present concerning sentencing *at the time of sentencing*. Because Rhodes had full and complete access to both the presentence report and the diagnostic evaluation

---

**3.** Rhodes's case arose under the 1990 version of the statute. The statute was subsequently amended and appears at Utah Code Ann. § 77–18–1(5)(b) (Supp.1991).

for almost two weeks prior to the second hearing, he had the opportunity to effectively contest any perceived factual inaccuracies at the second sentencing hearing. Like the defendant in *State v. Sanwick*, 713 P.2d 707, 709 (Utah 1986), whose appeal seeking the right to explore through cross-examination the assertions made by his victims in the presentence report was denied under section 77–18–1(4)(b), Rhodes's request for a continuance to reap more favorable testimony must be denied. Rhodes had substantial opportunity to cultivate witnesses and obtain personal evaluations after receiving the diagnostic report and before the second hearing. Consequently, the purpose of the statute, to insure the accuracy and comprehensiveness of the basis of sentence, and Rhodes's due process rights, were satisfied in this case.

Finally, Rhodes argues that the trial court's exercise of discretion was improper given the factual circumstances of the case. Rhodes insists that there were inconsistencies in the bases used by the evaluators to reach their conclusions, that the conclusions themselves are vague, and that the court, as conservator of the mentally ill, must compensate for the discrepancies and insure that the defendant is given the help he needs. The first two arguments are questions of fact which the trial court could consider in deciding whether to follow the evaluator's recommendations to send Rhodes to prison. The latter is strictly within the realm of the legislature.

The trial court has broad discretion in imposing sentence within the statutory scope provided by the legislature. *See Sanwick*, 713 P.2d at 708; *Lipsky*, 608 P.2d at 1244. The defendant is not entitled to probation, but rather the court is empowered to place the defendant on probation if it thinks that will best serve the ends of justice and is compatible with the

public interest. *Lipsky*, 608 P.2d at 1250 (Crockett, C.J., dissenting); *State v. Sibert*, 6 Utah 2d 198, 310 P.2d 388, 393 (1957) ("Probation is not a matter of right, and this is so no matter how unsullied a reputation one convicted of a crime may be able to demonstrate to the trial judge.").

In addition, rehabilitation is not the only factor the trial court may consider when making a sentencing determination. Other factors include deterrence, punishment, restitution, and incapacitation. *See* Scott W. Rodgers, *Binding Sentencing Guidelines: A Means of Controlling Utah's Prison Population*, 1990 Utah L.Rev. 309 (1990). Because so many different ingredients factor into the sentencing process, and because the discretionary imposition of probation rests in many cases upon subtleties not apparent on the face of a cold record, before the reviewing court may overturn the sentence given by the trial court:

> it must be clear that the actions of the judge were so *inherently unfair* as to constitute abuse of discretion. To do otherwise would have a chilling effect on the trial court which has the main responsibility for sentencing and which attempts to arrive at a proper sentence based on the facts and law before it.

*State v. Gerrard*, 584 P.2d 885, 887 (Utah 1978) (emphasis added) (citation omitted). *See also State v. Gibbons*, 779 P.2d 1133, 1135 (Utah 1989); *State v. Russell*, 772 P.2d 971 (Utah 1989); *State v. Plum*, 14 Utah 2d 124, 378 P.2d 671, 671–72 (Utah 1963).

There is ample factual substance in the record to support the trial court's finding that Rhodes's denial of responsibility and physical limitations would prohibitively deter successful treatment, and its consequent ruling that probation is not the appropriate alternative for Rhodes.[4] The tri-

---

4. Several sentencing rulings appealed before the Utah Supreme Court which either were based on less information than this trial court had or were made in direct contravention of the recommendations of the prosecutor or the diagnosticians were left untouched. *See Gibbons*, 779 P.2d at 1135–36 (no abuse of discretion where probation denied under Utah Code Ann. § 76–5–406.5(2) (1990) even though all twelve conditions of the statute were met); *Russell*, 772 P.2d at 971 (trial court had sufficient information on which to impose an appropriate sentence even absent a ninety-day evaluation); *State v. Carson*, 597 P.2d 862, 865 (Utah 1979) (no abuse of discretion for sentence to penitentiary in face of department of corrections's request for a second ninety-day evaluation); *Plum*, 378 P.2d at 672–73 (no abuse of discretion

al court had the recommendations of the ninety-day evaluation performed on Rhodes, the recommendations of the prosecutor, the fears of the mother of the victim that Rhodes be kept securely isolated from the victim, the diagnosticians' sentiment suggesting Rhodes's continued threat to children, and the rejection by the two facilities most likely to be able to help Rhodes, one of which personally interviewed him. Not only did the court have all this relevant data at its disposal, it had the unique opportunity to personally evaluate Rhodes at the hearing. Rhodes has failed to show how the denial of his request for a continuance was "inherently unfair" in light of the evidence. We hold that the court did not abuse its discretion by sentencing defendant to prison.

## CONCLUSION

The sentence imposed below is affirmed.

BILLINGS and GREENWOOD, JJ., concur.

where trial court denied probation based on the facts presented including State's recommenda-